Melvyn Epstein FESTINGER et al
*v.* Helen Epstein KANTOR et al

77-431                                    571 S.W. 2d 82

Opinion delivered October 2, 1978
(Division I)

*Howell, Price, Howell & Barron, P.A.,; John F. Gibson, Sr.; Reinberger, Eilbott & Smith;* and *Eichenbaum, Scott, Miller, Crockett & Darr,* for appellants.

*Friday, Eldredge & Clark; Drew & Mazzanti; Sanford L. Beshear, Jr.,* and *Robert R. Wright,* for appellees.

GEORGE ROSE SMITH, Justice. These two cases, consolidated in the trial court, have been pending for more than five years, but have not yet been brought to trial on the

merits. The only question we need consider on this appeal is whether two companion orders entered by the chancellor on October 12, 1977, are final and appealable. We hold that they are not and therefore dismiss the appeal.

Sam Epstein, a resident of Lake Village, died testate in 1944, survived by his widow and three daughters. The bulk of his estate was left in trust and has been administered by trustees ever since. We are told that the present litigation about the trust property involves more than 9,000 acres of land, a cotton gin, a filling station, oil and gas leases, and commercial property. The testator's widow died in 1963. Her will created another trust that has also been managed by the Sam Epstein trustees and is also involved in this litigation.

In July, 1973, two of Sam Epstein's daughters, Helen Kantor and Sylvia Angel, brought suit against the third daughter, Melvyn Festinger, for a partition of the property. The complaint took the position that the three sisters own the trust property in fee simple, subject to the termination of the trust. Mrs. Festinger argues that at the termination of the trust the property passes to the three sisters and to their bodily heirs. Two of the sisters have descendants; Mrs. Kantor, 70, does not. In August, 1973, Mrs. Festinger filed the second suit, seeking a construction of both her parents' wills. The two cases were consolidated.

Through the years the issues have proliferated. At present the pleadings seek an interpretation of the two wills, a construction of a court order entered in 1964, continuing the existence of the Sam Epstein trust after his widow's death, an audit of the trustees' accounts, an accounting, the removal of the present trustees, the appointment of a receiver, the termination of the trusts, and partition of the property. There are also pleadings bringing in the bodily heirs of Mrs. Festinger and of Mrs. Angel and third party complaints bringing in still other defendants. It is not an overstatement to say that the issues are as numerous as would ordinarily be found in a half dozen lawsuits.

A pretrial conference was held in September, 1977. The pretrial order includes a recitation that two basic issues — the construction of Sam Epstein's will as it affects the title to

the land and the effect of the 1964 court order — "may be determined as a matter of law prior to trial without objection by any party made this date." Pursuant to that pretrial order the chancellor entered, on October 12, 1977, the two companion one-page orders now before us. The first, with no discussion of the law, finds in two sentences that Sam Epstein's will left the property to his three daughters in fee simple, not in fee tail. The second finds that under the 1964 order the three daughters were bound by their election to continue the existence of the Sam Epstein trust. This order tacitly recognizes that it is not final, by providing that the parties may make further proof about the effect of the 1964 petition and order.

When the entry of the two orders was announced, opposing counsel became alarmed about the possibility that the orders might be construed to be final in the sense that they would be res judicata if appeals were not taken within 30 days. After a hearing upon a motion to set aside the two orders, originally styled "decrees," the chancellor merely changed the titles by specifically labeling them "Interlocutory Orders." The parties then perfected the present appeal and cross appeal. The size of the record, comprising a 13-volume typewritten transcript condensed into a 410-page printed abstract, results from the parties' attempt to bring up for review, in the wake of the supposedly final orders, a number of other points that are clearly interlocutory.

Counsel actually have very little to say in their briefs about the finality and appealability of the two main orders. The appellees, for example, without citation of specific supporting authority, assert that the order construing Sam Epstein's will is final because it "conclusively" excludes the bodily heirs of the daughters from any interest in the estate.

The test of finality, however, is not whether the order settles the issue of title as a question of law. To be final the decree must also put the court's directive into execution, ending the litigation or a separable branch of it. On this controlling point Chief Justice Cockrill's entire opinion in *Davie* v. *Davie*, 52 Ark. 227, 12 S.W. 558, 20 Am. St. Rep. 170 (1889), is applicable, but we quote only its especially pertinent language:

A judgment in equity is understood ordinarily to be interlocutory when inquiry as to matter of law or fact is directed preparatory to a final adjudication of the rights of the parties. . . . But "where the decree decides the rights to the property in contest and directs it to be delivered up, or directs it to be sold, and the complainant is entitled to have it carried into immediate execution, the decree must be regarded as final to that extent, although it may be necessary for a further decree to adjust the account between the parties."

\* \* \* \* \*

In this case while the decree takes the form of a final order in adjudicating the parties' proportionate interests in the land, it is apparent that the court has not fully adjudicated that branch of the cause. The relative interests of the parties in the land have been ascertained and determined, but . . . the court is yet to determine . . . what amounts shall be charged as liens upon the several interests, and whether there shall be a sale of some of the interests to satisfy the same. The decree does not direct its execution, but looks to further judicial action before that event. The plaintiffs can suffer no injury by awaiting the termination of the litigation.

The appeal in that case was dismissed for want of a final order. Other cases illustrating non-final orders vesting the title to land include *Sennett* v. *Walker,* 92 Ark. 607, 123 S.W. 769 (1909), and *Brown* v. *Norvell,* 88 Ark. 590, 115 S.W. 372 (1909). The correct appellate procedure was followed in *Hargus* v. *Hayes,* 83 Ark. 186, 103 S.W. 163 (1907), where the appeal from such a title-vesting order was delayed until a truly final decree was entered more than a year later.

In the case at bar the chancellor merely entered interlocutory orders deciding questions of law that were pertinent to the impending trial of the cases on their merits. Neither order disposed of the cases or purported to do so.

Appeal dismissed, without prejudice.

We agree. HOLT, HICKMAN and HOWARD, JJ.