## HAMPTON AND CRAIN, and CNA INSURANCE COMPANIES *v.* Rex BLACK

CA 90-104                                              806 S.W.2d 21

Court of Appeals of Arkansas
En Banc
Opinion delivered March 20, 1991

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *R. David Freeze*, for appellant.

*Robert David Trammell*, for appellee.

JAMES R. COOPER, Judge. The employer in this workers' compensation case, Hampton and Crain, and its insurance carrier, CNA Insurance Companies, appeal from the Arkansas Workers' Compensation Commission finding that the appellee is entitled to a vocational rehabilitation evaluation. The appellants contend on appeal that the appellee is not entitled to the evaluation because he "has not shown that he is entitled to permanent disability benefits."

When reviewing a decision of the Workers' Compensation Commission, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Company* v. *bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

At a hearing held on May 24, 1989, the parties stipulated that a compensable injury occurred on June 25, 1987, and that maximum wage benefits applied. The appellee contended his injury triggered his entitlement to an evaluation as to the propriety of vocational rehabilitation; the appellants contended that the appellee had returned to work; that he did not have a permanent disability; and that he was not entitled to the rehabilitation evaluation.

Arkansas Code Annotated § 11-9-505(a) (1987) provides:

> In addition to benefits otherwise provided for by this chapter, an employee who is entitled to receive compensation benefits for permanent disability shall be paid reasonable expenses of travel and maintenance and other necessary costs of a program of vocational rehabilitation if the commission finds that the program is reasonable in relation to the disability sustained by the employee.

The appellee testified that he was a carpenter who primarily did finish work and cabinet building. He said he was cutting tie wires when a piece of steel hit him in the left eye, and he is no

longer able to do finish carpentry work although he can still do rough carpentry. He testified that he is left-handed and because of the injury to his left eye he "couldn't hit a nail or nothing else." He said he has blurred vision and the sun irritates his eyes; because of his poor eyesight, he leaves cracks in window casings "you could stick a match through"; he "miscuts" lumber and other materials: and he built one house three inches "out of plumb." The appellee said he was afraid Hampton and Crain would lay him off so he got a release from his doctor and went back to work; however, he "couldn't drive a nail, couldn't do nothing." So, he said he would have to wait until his eye got better. He insisted he was an expert carpenter before his injury but now "people don't come to me no more, you know, wanting me to do the work."

On cross-examination the appellee testified that prior to his injury he had made $11.00 or $12.00 an hour. Since the injury, he had worked in Shreveport and made $6.00 an hour building screened porches on each end of an old house; had made $10.00 an hour helping to build two houses; and had also worked at a chemical plant in El Dorado as a journeyman carpenter making union scale of $12.35 an hour.

In a letter dated August 10, 1987, Dr. John Williamson, an opthalmologist, reported:

> Mr. Black was seen on 6-26-87 with a history of sustaining an injury to his left eye.
>
> . . . .He had a large metallic foreign body located in the central portion of his left cornea which appeared to have been present for a number of days. The foreign body was removed without difficulty, however, there was a considerable amount of rust staining of the cornea stroma, the majority of which was removed. . . .
>
> He was last seen on 7-24-87, visual acuity was 20/25 and 20/30. He does have some scar related to the injury in his central cornea, however, no surgery is anticipated.

In another letter dated June 3, 1988, Dr. Williamson wrote:

> [Appellee] has some residual scarring and some continued complaints of photophobia, however, functionally his vi-

sion is quite good.

No other treatment is anticipated and since his vision is almost to normal he has not been carried as sustaining any permanent disability.

On July 6, 1988, Dr. Williamson wrote:

Mr. Black was back in the office on July 6, 1988, at your request.

His vision in the right eye is 20/15, vision in the left eye is 20/30. He continues to have a scar on his left cornea from his previous injury.

His disability is still quite small. I would not recommend a corneal transplant on the basis of the size of the scar and with 20/30 vision I think it would be ill advised to pursue any additional treatment at the present time.

If his vision should deteriorate in the left eye, then we can always hold in reserve the fact that he could have a corneal transplant but his vision should be substantially worse than 20/30 before that is indicated.

Subsequently, appellee was examined by another ophthalmologist, Dr. Cliff Clifton, who reported on December 8, 1988, as follows:

I saw Rex Black on December 5, 1988 with a history of having a foreign body removed form his left eye approximately one year ago.

On my examination his visual acuity was 20/15 in the right eye and 20/30 in the left eye. His examination revealed a corneal scar just in the inferior portion of the pupillary axis of the left eye.

I agree with Dr. John Williamson that this represents a very small decrease in his vision. However, it did occur to his left eye which is his dominant eye and makes it a more difficult adjustment. I do not feel that this defect will increase with time and I do not recommend corneal transplantation which would be the only treatment. It would be very difficult to attach a percentage of disability to this defect. However, I would estimate it at least less

than 5% of one eye.

█ We do not agree with the appellants' argument that the appellee is not entitled to a vocational rehabilitation evaluation because he is not entitled to permanent disability benefits. We first note that Ark. Code Ann. § 11-9-505(a), *supra*, does not require that permanent disability benefits be awarded a claimant before he can have vocational rehabilitation but only that he be "entitled to receive compensation benefits for a permanent disability." The opinion of the administrative law judge found:

> That the claimant has sustained vision loss in his left eye, as a result of the compensable injury, *as well as some degree of permanent impairment.*
>
> That the claimant is a finish carpenter by profession, left-handed and sustained vision loss in his dominant eye; and, as a consequence of his compensable injury and resulting vision loss as well as permanent partial impairment, claimant's job performance and employability has been adversely affected. [Emphasis added.]

The law judge's findings were adopted by the full Commission and we think there is substantial evidence to support the Commission's action. We also note that in *Smelser v. S.H.&J. Drilling Corp.*, 267 Ark. 996, 593 S.W.2d 61 (Ark. App. 1980), we said:

> Whether or not an injured employee can be retrained is a pertinent factor for the Commission to consider in determining the amount, if any, of wage earning loss. If no rehabilitative evaluation is made the Commission has no way of knowing whether the employee could have been retrained.

267 Ark. At 998. Also, in *Coosenberry v. McCroskey Sheet Metal*, 6 Ark. App. 177, 639 S.W.2d 518 (1982), we said that while Ark. Stat. Ann. § 81-1310 (now Ark. Code Ann. § 11-9-506) does not specifically mention evaluation reports, it does provide for the Commission to determine if a proposed program of vocational rehabilitation is reasonable in relation to the disability sustained by the employee, but "the Commission must first decide if the claimant is a candidate for rehabilitation."

■ In the present case, the appellee's loss of vision is a scheduled injury, and under Ark. Code Ann. § 11-9-521(f) (1987), he would be entitled to compensation for the proportionate loss of use of his injured eye. However, the benefits for scheduled injuries are not limited to the schedule if the injury renders the employee permanently and totally disabled. *Johnson Construction Co.* v. *Noble*, 257 Ark. 957, 521 S.W.2d 63 (1975). Therefore, we do not think the Commission erred in ordering the vocational rehabilitation examination. Even if the appellee is not totally disabled, he may be entitled to enter a program of vocational rehabilitation under the provisions of Ark. Code Ann. § 11-9-505 (1987), which allows rehabilitation where a claimant is entitled to benefits for permanent disability and the program is reasonable in relation to the disability sustained. Here, there is evidence that the appellee has not had steady work since his injury. As we said in *Smelser, supra*, without an evaluation the Commission has no way of knowing whether the appellee can be retrained.

■ Although the parties have not questioned whether the order here is appealable, this is a matter which arose in our conference. We may raise the issue on our own motion. *See Gina Marie Farms* v. *Jones*, 28 Ark. App. 90, 770 S.W.2d 680(1989). We will dismiss an appeal on our own motion in cases where we realize that there is no final, appealable order. *Gina Marie Farms* v. *Jones, supra.* For an order to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy, putting the court's directive into execution and ending the litigation or a separable branch of it. *Id.* We think it significant that the Commission's order did not merely establish the appellee's right to a vocational rehabilitation examination: In addition, the appellee was awarded benefits under Ark. Code Ann. § 11-9-505(d) (1987), which provides that:

> In addition to the benefits previously enumerated in this section, an employee, if not working or receiving other weekly benefits under this chapter, shall be entitled to payment of his regular weekly benefit rate commencing on the date a request for a rehabilitation program is received by the commission, carrier, or employer and continuing during the period the parties are exploring rehabilitation

potential, the period not to exceed six (6) weeks.

While we express no opinion concerning the appealability of an order granting a vocational rehabilitation examination where benefits under § 11-9-505(d) are not awarded, we hold that an order granting both a rehabilitation examination and benefits under § 11-9-505(d) ends a separable branch of the litigation and is therefore appealable.

Affirmed.

MAYFIELD, J., concurs.

JENNINGS, J., dissents.

DANIELSON, J., not participating.

MELVIN MAYFIELD, Judge, concurring. All attorneys who practice workers' compensation law should take special note of this case, at least to the extent that it deals with what is an appealable order in cases sought to be appealed from the Commission. Suppose you represented one of the parties in the instant case and concluded, as the dissenting opinion does, that the Commission's order was not an appealable order. Would the majority of this court allow you to appeal the Commission's order at some later date?

As stated in my concurrence in *American Mutual Ins. Co.* v. *Argonaut Ins. Co.*, 33 Ark. App. 82, 801 S.W.2d 55 (1991), what is needed is a "bright-line" rule by which attorneys may determine whether an order of the Commission is or is not appealable. I thought this need might have been substantially met by that case, which was decided by the court en banc without a dissent. The majority opinion stated the "general rule" as follows: "To be final, the order must dismiss the parties from the court, discharge them from the action, or conclude their rights as to the subject matter in controversy." The opinion then made a significant contribution by stating, "We have held that the test for determining whether an order of the Workers' Compensation Commission is appealable is whether it puts the Commission's directive into execution, ending the litigation or a separable part of it." 33 Ark. App. at 84. That *test* is the rule that *Gina Marie Farms* v. *Jones*, 28 Ark. App. 90, 770 S.W.2d 680 (1989), said should be added to the "general rule."

Today, however, even though the majority opinion in the instant case sets out a rule of finality which combines the general rule and the additional language used in *Gina Marie Farms*, the opinion clouds the matter by stating in the last paragraph that "we express no opinion concerning the appealability of an order granting a vocational rehabilitation examination where benefits under [Ark. Code Ann.] § 11-9-505(d) are not awarded." Moreover, the dissenting opinion appears to recede from the unanimous per curiam opinion in *Gina Marie Farms* and from the en banc opinion in *American Mutual Ins. Co.* v. *Argonaut Ins. Co.*, which was adopted without dissent.

As to the dissenting opinion in the instant case, I would point out that it overlooks the language in *Festinger* v. *Kantor*, 264 Ark. 275, 571 S.W.2d 82 (1978), where the Arkansas Supreme Court said:

> The test of finality, however, is not whether the order settles the issue of title as a question of law. To be final the decree must also put the court's directive into execution, ending the litigation or a separable branch of it. On this controlling point Chief Justice Cockrill's entire opinion in *Davie* v. *Davie*, 52 Ark. 224, 12 S.W. 558, 20 Am. St. Rep. 170 (1889), is applicable, . . .

264 Ark. at 277. We relied upon that language in *Gina Marie Farms* when we said:

> In *Festinger* v. *Kantor*, 264 Ark. 275, 571 S.W.2d 82 (1978), the court extracted from the early case of *Davie* v. *Davie*, 52 Ark. 224, 12 S.W. 558 (1889), the rule—"To be final the decree must also put the court's directive into execution, ending the litigation or a separable branch of it." 264 Ark. at 277.

28 Ark. App. at 94. Whether the dissent in the instant case makes a distinction between the words "severable" and "separable" is not clear; however, in *Festinger* our supreme court used the word "separable" in describing what is necessary for an order to be final and appealable. Also, the opinion in *Gina Marie Farms*, which relies upon the test of finality set out in *Festinger*, adequately explains, in my view, the cases discussed in *Gina Marie Farms*. Obviously, other explanations are possible. But I

believe this court should settle as nearly as possible on a rule or test that will serve as a bright-line for future guidance of the bar and any others interested in this issue. Therefore, I agree with the result reached by the majority on the issue before us, and I agree with the following rule stated by the majority opinion.

> For an order to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy, putting the court's directive into execution and ending the litigation or a separable branch of it.

Of course, it is true that all judges on a multijudge court will not always agree on the application of any rule under all the different circumstances in which the issue may arise. Personally, I wish the majority opinion in this case had not stated that "we express no opinion concerning the appealability of an order granting a vocational rehabilitation examination where benefits under [Ark. Code Ann.] § 11-9-505(d) are not awarded." So, even if a majority of the members of this court are now in agreement with the rule or test of a final order as set out in today's majority opinion, this does not mean that a majority of the judges of this court will agree with the attorneys as to the finality of every order sought to be appealed. In *Stafford* v. *Diamond Construction Co.*, 31 Ark. App. 215, 793 S.W.2d 109 (1990), the attorneys on both sides thought the Commission's order was appealable but a majority of this court did not agree. I think this is an important point to remember. I know of no case which holds that the failure to appeal from an order because an attorney did not think it was appealable is a reason or excuse which will allow the appellate court to review the order at a latter date.

Therefore, I suggest it is better to have an appeal dismissed because there is no final, appealable order than to have an appeal dismissed because the appeal was not taken in time. In *Stafford*, the employer's insurance carrier filed a motion to dismiss the claimant's appeal even though the carrier thought the better rule was to allow the appeal. But the motion to dismiss was allowed and neither party had to file a brief on the merits of the appeal and neither party was foreclosed from raising the issue again after a final, appealable order has been entered.

JOHN E. JENNINGS, Judge, dissenting. While I have no

quarrel with the treatment of the substantive issues presented, I cannot agree that the order is appealable. The idea that an order ending a "severable branch" of the litigation is appealable began as dicta in *Davie* v. *Davie*, 52 Ark. 224, 12 S.W. 558 (1889). In *Parker* v. *Murray*, 221 Ark. 554, 254 S.W.2d 468 (1953), the supreme court held that an order was appealable "where a distinct and several branch of the case is finally determined, although the suit is not ended." (Quoting *Davie* v. *Davie, supra.*) While I do not disagree with the concept, I do not think that it will be very often helpful in determining the question of the appealability of an order. In the case at bar the question we are asked to determine is certainly a separate issue, but it is not, in my view, a severable branch of the litigation.

Workers' compensation cases are different from cases appealed from trial courts. Sometimes, appeals are allowed in workers' compensation cases even though the litigation before the Commission has not come to and end. *See, e.g., Bibler Brothers, Inc.* v. *Ingram*, 266 Ark. 969, 587 S.W.2d 841 (1979); *Luker* v. *Reynolds Metals Co.*, 244 Ark. 1088, 428 S.W.2d 45 (1968). These kinds of cases, in my view, can be better explained using other reasoning. The supreme court has held that a judgment is final and appealable if it, in form or effect, operates to divest some right so as to put it beyond the power of the court to place the parties in their former condition. *See Allred* v. *National Old Line Ins. Co.*, 245 Ark. 893, 435 S.W.2d 104 (1968). The court has also looked to see whether the appellant would suffer injury by awaiting the termination of the litigation. *Sennett* v. *Walker*, 92 Ark. 607, 123 S.W. 769 (1990). Appeals may be allowed to prevent irreparable injury pending suit. *See Orem* v. *Moore*, 224 Ark. 146, 272 S.W.2d 60 (1954).

When we permit the appeal of separate issues as the case below progresses we encourage piecemeal litigation. "Cases cannot be tried by piecemeal, and one cannot delay the final adjudication of a cause by appealing from the separate order of the court as the cause progresses." *H.E. McConnell & Son, v. Sadle*, 248 Ark. 1182, 455 S.W.2d 880 (1970) (quoting *McPherson* v. *Consolidated Casualty Co.*, 105 Ark. 324, 151 S.W. 283 (1912)). The reason for the general rule limiting the right of appeal to final judgments is to prevent the unnecessary expense and delay to the litigants of repeated appeals. *See State* v.

*Greenville Stone & Gravel Co.*, 122 Ark. 151, 182 S.W. 555 (1916); *Davie* v. *Davie*, 52 Ark. 224, 12 S.W. 558 (1889).

I think we should heed our own admonition and follow the better practice of reviewing only orders of the Commission that are final. *See Gina Marie Farms* v. *Jones*, 28 Ark. App. 90, 770 S.W.2d 680 (1989).

I respectfully dissent.