2013 Ark. 161

**Roger McLEMORE, Charles McLemore, and Mike Hall, individually and on behalf of a class consisting of members of the Arkansas State Police Retirement System, Appellants**

**v.**

**Richard WEISS, Director, Arkansas Department of Finance and Administration; J.R. Howard, Director, Department of Arkansas State Police; Gail H. Stone, Executive Secretary, Arkansas State Police Retirement System; John W. Allison, Kirk Bradshaw, Joe Miles, Brant Tosh, Donnie Underwood, Blake Wilson and John Shelnutt, Trustees, Arkansas State Police Retirement System, Appellees.**

No. 12–958.

Supreme Court of Arkansas.

April 18, 2013.

C. Burt Newell, Hot Springs, for appellants.

Dustin McDaniel, Att'y Gen., by: Patricia Vanausdall Bell, Ass't Att'y Gen., for appellees.

DONALD L. CORBIN, Justice.

Appellants Roger McLemore, Charles McLemore, and Mike Hall, individually and on behalf of a class consisting of members of the Arkansas State Police Retirement System (ASPRS), appeal an order of the Pulaski County Circuit Court granting summary judgment in favor of Appellees, Richard Weiss, director of the Arkansas Department of Finance & Administration; J.R. Howard, director of the Department of Arkansas State Police (ASP); Gail H. Stone, executive secretary of the ASPRS; and John W. Allison, Kirk Bradshaw, Joe Miles, Brant Tosh, Donnie Underwood, Blake Wilson, and John Shelnutt, as trustees of the ASPRS. On appeal, Appellants assert that the circuit court erred in finding that a uniform and travel-expense allowance provided for in Ark.Code Ann. § 12–8–209 (Repl.1999)[1]

1. Section 12–8–209 was repealed by Act 1609 of 2003.

was not reportable to the ASPRS as a portion of payroll pursuant to Ark.Code Ann. § 24–6–209(a). As this is a second appeal of this suit, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(7) (2012). We find no error and affirm the grant of summary judgment.

The underlying facts of this case were set forth in *Weiss v. McLemore*, 371 Ark. 538, 268 S.W.3d 897 (2007), wherein this court decided the limited issue of the applicability of the doctrine of sovereign immunity.

For many years, State Police officers received allowances for their uniforms and travel. These allowances came in the form of additional payments, received at the same time as every other paycheck, of $125.00 for "expenses" and $166.66 for a "clothing allowance." The total of these additional payments was $3,500 per year. Until 1992, this additional $3,500 per year for "expenses" and "clothing allowances" was not included on the W–2 forms issued by the Department of Finance & Administration. Beginning in 1992, apparently upon inquiry from the Internal Revenue Service, this additional sum was included on the officers' W–2 forms. However, even after the $3,500 began being reported as taxable income, that sum was not included when calculating each officer's contributions to the ASPRS.

Pursuant to Act 1071 of 1997, the Department of State Police's contributions to the Retirement System was a sum equal to 22% of "active member payroll," although that term was not defined by the Act. Between 1997 and 2003, the Retirement System was funded based on the 22% formula, but those calculations did not take into account the $3,500 per year that the officers were receiving for expenses and clothing allowances.

Act 1609 of 2003 provided for a one-time annual salary adjustment of $3,500 for commissioned officers. Following passage of Act 1609, the State began to include the additional $3,500 as "active member payroll" for purposes of funding the Retirement System. In addition, the $3,500 began to be included in calculating retiring officers' final average compensation. It was apparently this change in the funding calculations that constituted the impetus for the instant lawsuit.

In November of 2005, the officers filed a class-action lawsuit, contending that the various state defendants had violated the law by failing to properly fund the ASPRS between 1992 and 2003. The officers also alleged that the improper funding of the retirement system constituted an illegal exaction and an impairment of contractual obligations in violation of Ark. Const. art. 2, § 17. Their complaint sought a writ of mandamus directing the State to "immediately correct the records of all class members individually and the ASPRS as a system[.]" In addition, the officers' complaint asked for a declaratory judgment to the effect that "the current method of calculation of [the plaintiffs'] retirement benefits by [the State] is in violation of statutory intent and is in breach of plaintiffs' contract with [the State]."

The State filed a motion to dismiss on December 27, 2005, in which it asserted that the officers' claims were barred by sovereign immunity. In addition, the State asserted that the officers had failed to state claims for an illegal exaction or a breach of contract.

On January 5, 2006, the officers responded to the State by filing an amended complaint in which they asserted a new cause of action based on 42 U.S.C. § 1983. In essence, the officers con-

tended that, by failing to properly fund the ASPRS, the State had deprived them of their property without just compensation.

The trial court considered the matter solely on the pleadings and entered an order on September 5, 2006. In that order, the court found that the officers had failed to state a claim for an illegal exaction; however, the court did find that the complaint adequately set out a claim for breach of contract. Regarding the State's sovereign immunity argument, the trial court found that § 24–6–205 provided "a limited waiver of sovereign immunity." Finally, the court agreed with the State that the plaintiffs had failed to state a claim pursuant to 42 U.S.C. § 1983, and it dismissed that claim. The State filed a timely notice of appeal on October 3, 2006, and now raises three arguments for reversal in this interlocutory appeal.

*Weiss*, 371 Ark. at 539–41, 268 S.W.3d at 898–99 (footnote omitted). We affirmed the circuit court's finding that Ark.Code Ann. § 24–6–205 provided a limited waiver of sovereign immunity, thereby allowing the ASPRS to correct the retirement record of a state police officer. The case was then remanded to circuit court.

Following our remand, the parties engaged in discovery and litigated the issue of class-action certification and notice to the class members. Thereafter, on September 8, 2011, Appellants filed a motion for summary judgment, arguing that, from 1987 until 2003, the payments denominated for uniform and travel-expense allowance should have been calculated as salary for purposes of retirement contributions. In this regard, Appellants asserted that the State failed to take into account the $3,500 per year that each trooper received between 1987 and 2003 when calculating the active member payroll or covered salary in

its contribution to ASPRS; that each officer who received retirement benefits or who will receive retirement benefits and whose compensation had been calculated before 2003 had been receiving an improper amount of retirement benefits; and that appellees must correct all the records to the ASPRS to cure these alleged errors.

Appellees responded and filed a cross-motion for summary judgment, alleging that they were entitled to judgment as a matter of law because Appellants could not establish that they miscalculated Appellants' retirement contributions or benefits.

On September 4, 2012, the circuit court entered an order granting summary judgment in favor of Appellees. In its order, the circuit court stated as follows:

> The Court believes that the [appellees'] position is correct. The argument that [appellants] advance requires the Court to find that the General Assembly, which establishes the salary of members of the Arkansas State Police and created the ASPRS program, intended that the uniform and travel expense payments be considered as "salary" and "payroll," but did not appropriate funds for retirement contributions based on those amounts. The Court simply cannot do so. The only way the Court can construe the appropriation and retirement contribution statutes consistently, as it is obligated to do, *Glaze v. State*, 2011 Ark. 464, 385 S.W.3d 203 (2011), is to accept the construction of them advanced by the [appellants]. Therefore, the Court grants their motion for summary judgment.

From that order, comes the instant appeal.

Appellants sole point on appeal is that the circuit court erred in finding that the uniform and travel-expense allowance, originally codified at section 12–8–209, was

not reportable to the ASPRS as a portion of payroll, as required by section 24–6–209(a). In support of their argument, Appellants assert that (1) the $3,500 allowance was never a reimbursement figure, (2) the $3,500 allowance was payroll when considered in light of the definition of payroll throughout the Arkansas Code, (3) subsequent legislative action evidences an intent that the money was considered to be salary all along, (4) legislative intent is not controlling where it is clear that the sum was salary, and (5) the $3,500 allowance was considered taxable income and was thus properly payable to ASPRS.

Appellees argue to the contrary that the circuit court correctly granted their motion for summary judgment as the $3,500 allowance was not "salary" or "payroll" and thus was properly excluded from calculating Appellants' retirement contribution and benefits. Appellees admit that the terms "covered salary" and "active member payroll" were not included in the definition section of the ASP retirement law, but they point out that the term "salary" was defined and expressly precluded any reimbursements for travel expenses. Thus, according to Appellees, the circuit court correctly found that construing the applicable statutes, together with the ASP's appropriations, that the legislature did not intend the $3,500 to qualify as either salary or payroll for purposes of computing retirement contributions or benefits.

Our law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *City of Malvern v. Jenkins*, 2013 Ark. 24, 425 S.W.3d 711. Normally, we determine if summary judgment is proper based on whether evidentiary items presented by the moving party leave a material fact unanswered, viewing all evidence in favor of the nonmoving party. *Massey v. Fulks*, 2011 Ark. 4, 376 S.W.3d 389. Here, however, the facts are not in dispute, and the circuit court decided the case purely as a matter of statutory interpretation.

The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Stewart v. Ark. Glass Container*, 2010 Ark. 198, 366 S.W.3d 358. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct. *Racine v. Nelson*, 2011 Ark. 50, 378 S.W.3d 93. The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the drafting body. *Richard v. Union Pac. R.R. Co.*, 2012 Ark. 129, 388 S.W.3d 422. In reviewing issues of statutory interpretation, we first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Wal–Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.*, 374 Ark. 489, 288 S.W.3d 627 (2008). When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007). It is axiomatic that this court strives to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179.

We turn now to Appellants' argument that the circuit court erred in its interpretation and application of the statutes at issue here. From 1977 to 1997, the ASP'S employer contribution rate was set forth as follows:

Effective July 1, 1977, and thereafter, the employee contribution to the State Police Retirement System is hereby increased by an additional one and one-half percent (1 1/2%) of covered salary, and the employer contribution to the State Police System is hereby increased by an additional one and one-half percent (1 1/2%) of covered salary.

Act 460 of 1977, at § 3. The term "covered salary" was not defined by statute.

This Act was amended in 1997, and is presently codified at Ark.Code Ann. § 24-6-209, which provides in relevant part:

(a) The Department of Arkansas State Police, as employer, shall make contributions to the State Police Retirement System of twenty-two percent (22%) of *active member payroll.*

(Emphasis added.) Just as in the previous version, there is no definition of "active member payroll."

We note at the outset that it is a rule of statutory construction that the manner in which a law has been interpreted by executive and administrative officers is to be given due consideration and will not be disregarded unless it is clearly wrong. *Voltage Vehicles v. Ark. Motor Vehicle Comm'n,* 2012 Ark. 386, 424 S.W.3d 281. An administrative interpretation by a state agency is to be regarded as highly persuasive. *Id.* Where the statute is not ambiguous, however, this court will not interpret it to mean anything other than what it says. *Id.* Here, upon review of the code provisions specifically applicable to the ASPRS and in light of the interpretation by the ASPRS, we cannot say that the circuit court erred in its interpretation of section 24-6-209(a).

Specifically, subsection (a) of section 24-6-209 requires that the ASP, as the em-ployer of the officers, must make annual transfers of employer contributions to ASPRS of twenty-two percent of the "active member payroll." As we have pointed out, the term "active member payroll" was not included in the definition section of the statute, nor was the predecessor term "covered salary" defined in the prior version of the statute. There is, however, a definition for the term "salary," found in the definition section governing the ASPRS and codified at Ark.Code Ann. § 24-6-201(14)(A) and (B). This definition, which has remained unchanged since it first appeared in Act 484 of 1959, provides as follows:

(14)(A) "Salary" means the compensation paid a member for service rendered by him as a state police officer.

(B) In no case shall the term "salary" include reimbursement for lodging, meals, or travel expenses.

Ark.Code Ann. § 24-6-201(14)(A) & (B) (Repl.2000).[2] Clearly, the term "salary" as defined in this section does not embrace the uniform and travel-expense allowance. We find "salary" as defined to be instructive in interpreting "active member payroll," particularly where the prior version of the statute referenced "covered salary." Thus, we agree with the circuit court that "active member payroll" as set forth in section 24-6-209(a) does not include the $3,500 uniform and travel-expense allowance paid to officers.

Our conclusion in this regard is supported by the evidence submitted in this case. Appellees attached as exhibits to their cross-motion for summary judgment the ASP's Appropriation Act for fiscal years 1987 through 2003. In those acts, the legislature itemized appropriations to the ASP to be payable from the Depart-

**2.** The current version of section 24-6-201, codifies the definition of "salary" at subsec-tions (17)(A) & (B).

ment of Arkansas State Police Fund, and in that itemization, appropriations for regular salaries, uniform allowance, and travel-expense allowances are listed separately.

Additionally, attached to Appellees' cross-motion for summary judgment was an affidavit from Bruce Waller, the ASP fiscal officer from 1987 through 2001, explaining that "[t]hese allowances were issued as two separate warrants, issued once a month." He further explained that the travel-expense allowance was issued in the amount of $166.66 per month and that after the increase in the uniform allowance in 1991, the warrant for the uniform allowance was issued in the amount of $125 per month. Neither of these allowances were included in the warrants issued for officers' regular pay, which was issued every two weeks. According to Waller, the allowances were never considered by the ASP to be wages, salary, or payroll. This was confirmed by the affidavit of Lieutenant Glenn Charles Sligh, attached in support of Appellants' motion for summary judgment, wherein Lt. Sligh stated that while he was an ASP officer and until 2003, he "received two checks with every other paycheck—one called travel expense and one that['s] called a clothing allowance."

Appellees also submitted Act 1609 of 2003, which repealed the uniform and travel-expense allowances and made a one-time adjustment in annual salary in the amount of $3,500 for commissioned officers and lesser amounts for other officers. In Act 1609, the legislature eliminated the travel and uniform line-item allowances, increased the salary of each eligible officer by the amount of the annual allowances, and appropriated the requisite retirement matching of twenty-two percent for the new salary amounts.

Appellants argue that the adoption of Act 1609 by the legislature is conclusive evidence that the legislature recognized that the money in question was a part of the ASP officers' compensation, not a reimbursement. We disagree. We believe the adoption of Act 1609 reflects that, prior to July 1, 2003, the legislature did not consider uniform allowances and travel expenses to be "payroll" for purposes of retirement-matching calculations because, prior to 2003, they were separate, line-item appropriations. Moreover, prior to 2003, the legislature did not appropriate funds for retirement based on the uniform and travel-expense allowance.

Finally, we disagree with Appellants' assertion that the allowance was part of "covered salary" or "active member payroll" because beginning in 1987 it was reported as taxable income to the Internal Revenue Service. The fact that the allowance was reportable for tax purposes does not automatically qualify it as salary or payroll. In fact, in Waller's affidavit, he explained that while the IRS classifications of income for tax purposes are quite broad, the classifications of wages, salary, and payroll by the General Assembly do not include any items other than the line items specifically identified as salaries or overtime in the appropriation acts.

Considering the definition of salary in section 24–6–201(14)(A) and (B), particularly in light of the evidence adduced at trial, we hold that "active member payroll" as set forth in section 24–6–209(a) does not include the $3,500 uniform and travel-expense allowance, such that it is reportable to ASPRS for purposes of calculating retirement benefits. Accordingly, we affirm the circuit court's grant of summary judgment in Appellees' favor.

Affirmed.

GOODSON, J., not participating.