

# SUPREME COURT OF ARKANSAS

**No.** CV–13–349

| | |
|---|---|
| FIRST STATE BANK<br><div align="right">APPELLANT</div> | **Opinion Delivered** February 6, 2014 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CIV. 2011-2386-4] |
| METRO DISTRICT CONDOMINIUMS PROPERTY OWNERS' ASSOCIATION, INC.<br><div align="right">APPELLEE</div> | HONORABLE G. CHADD MASON AND HONORABLE CRISTI BEAUMONT, JUDGES |
| | AFFIRMED. |

## DONALD L. CORBIN, Associate Justice

We accepted certification of the instant case from the Arkansas Court of Appeals, as it involves an issue requiring a first-time interpretation of Arkansas Code Annotated section 18-13-116 (Repl. 2003), known as the Arkansas Horizontal Property Act. Appellant First State Bank argues on appeal that the circuit court erred in refusing to extinguish a lien for unpaid assessments held by Appellee Metro District Condominiums Property Owners' Association, Inc. (Metro POA). Appellant also argues that the circuit court erred in awarding Appellee attorney's fees. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(1), (4), (5), and (6) (2013). We affirm.

The record reflects the following facts. On December 2, 2008, Nock-Broyles Land Development, LLC, and Henry D. Broyles executed a promissory note in the amount of $275,000, to purchase a condominium, Unit 270 in the Metro District Condominiums

Horizontal Property Regime (Metro HPR), which was located in Fayetteville. The borrowers agreed to pay First State the principal amount, plus interest, by December 2, 2011, unless payment was demanded prior to that date, and executed a real estate mortgage in favor of First State.

Thereafter, on February 23, 2010, Nock-Broyles, Mr. Broyles, and First State entered into a debt-modification agreement, whereby the parties agreed to modify the repayment terms and the loan's maturity date to November 10, 2011. This agreement also added 270 Metro, LLC, as an additional guarantor of all obligations due and owing under the terms of the loan.

Prior to the loan's maturity date, First State demanded payment in full under the terms of the loan agreement. First State then filed an amended complaint in the Washington County Circuit Court on November 9, 2011, against Nock-Broyles, 270 Metro, and Metro POA.[1] First State alleged that Nock-Broyles had breached and defaulted on its obligations under the loan, as set forth in the promissory note and the debt-modification agreement, and that First State was entitled to collect the money owed from Nock-Broyles and 270 Metro. First State prayed that it be granted judgment against Nock-Broyles and 270 Metro, jointly and severally, in the amount of $247,289.13, plus all unpaid accrued interest and other costs and attorney's fees that might be incurred. First State requested that if payment was not made within ten days that the property be sold at a foreclosure sale and that Nock-Broyles and 270

---

[1]The original complaint was filed on August 10, 2011, against Nock-Broyles and 270 Metro. Mr. Broyles had declared bankruptcy and was never named as a party to the action.

Metro be held responsible for any deficiency that existed after the sale. Additionally, First State sought a declaration that its judgment be declared the first and superior lien on the real property. It acknowledged that Metro POA might claim an interest in the real property related to unpaid assessments, but asserted that any such interest was inferior to and subject to its mortgage and asked that any interest of Metro POA be foreclosed upon, terminated, and forever extinguished.

No answer was filed by Nock-Broyles or 270 Metro. Metro POA filed an answer and asserted, in relevant part, that its interest in the real property, as created by Metro HPR, dated June 21, 2005, was superior to that of First State.

First State moved for a default judgment against Nock-Broyles and 270 Metro, and subsequently moved for summary judgment as to all parties on July 17, 2012. Therein, First State reasserted that Nock-Broyles and 270 Metro were in default and further asserted that Metro POA had not filed any record of lien against the unit for any unpaid assessments and, regardless, First State's interest in the property was superior to any interest of Metro POA. More specifically, First State argued that under section 18-13-116(c), its mortgage interest in the property was superior to any interest resulting from any unpaid assessments owed to Metro POA. First State again requested the circuit court to find that Metro POA's interest was inferior and to extinguish any such claim it may have.

On September 12, 2012, Metro POA filed a notice of lis pendens, asserting its right to collect certain past-due property owners' association fees and assessments due and owing on Unit 270.

The circuit court entered an order on October 12, 2012, denying without prejudice First State's motion for summary judgment. Thereafter, Metro POA filed a motion for attorney's fees on December 11, 2012, based on the circuit court's ruling that its interest survived First State's foreclosure action and asserted that the master deed and bylaws provided for the collection of attorney's fees. First State responded, arguing that because Metro POA had not complied with its own bylaws by filing a lien for the unpaid assessments, it could not avail itself of the attorney's fees provision in the bylaws. Moreover, First State argued that Metro POA was not entitled to an award of attorney's fees as it had never filed an action or a cross-claim in this case seeking to enforce its claim for unpaid assessments.

On February 6, 2013, the circuit court entered an amended order of default judgment and decree of foreclosure, granting First State judgment against Nock–Broyles and Metro 270 in the amount of $247,289.13, plus interest and costs.[2] The judgment gave First State the right to foreclose on the property if the judgment was not paid and appointed the circuit court clerk as Commissioner of the Court to conduct any foreclosure sale. The circuit court also found that Metro POA's interest from the unpaid monthly assessments would survive the foreclosure and would become the liability of whoever purchased the property at the foreclosure sale. Thereafter, First State purchased the property at the foreclosure sale for $148,000, by way of a credit against its judgment.

---

[2]Neither Nock–Broyles nor Metro 270 appealed the order of the default judgment, and they are not parties to the instant appeal.

4

First State filed a timely notice of appeal on February 15, 2013, specifically stating that it was appealing only that part of the order and amended order finding that Metro POA's interest should not be extinguished and would survive the foreclosure of the property and become the liability of the purchaser. Thereafter, on March 22, 2013, the circuit court entered an order awarding Metro POA attorney's fees in the amount of $1,500. First State filed a supplemental notice of appeal on March 28, 2013, stating its intent to appeal the award of attorney's fees as well. We turn now to the arguments on appeal.

First State first argues that the circuit court properly recognized that it had the superior interest in the real property but erred in its interpretation of section 18-13-116(d) to conclude that Metro POA's interest for the unpaid assessments should not be extinguished and would become First State's responsibility as the purchaser of the property at the foreclosure sale. In advancing this argument, First State asserts that the effect of the circuit court's ruling was to elevate Metro POA's assessment above the bank's mortgage on the property in contravention of section 18-13-116(c). According to First State, subsection (d) contemplates only an ordinary course-of-business sale. To hold otherwise, First State argues, would be contrary to the well-established law that liens being foreclosed upon are extinguished by the judgment of foreclosure. In sum, First State argues that subsection (c) controls in those instances where there is a foreclosure sale, while subsection (d) governs regular course-of-business sales.

Metro POA argues to the contrary that the circuit court properly refused to extinguish its interest, as the purchaser of a foreclosed unit is liable for delinquent assessments by virtue of section 18-13-116(d), which provides no exception for foreclosure sales. Thus, according

5

to Metro POA, the plain language of section 18-13-116(d) dictates that a purchaser of the property is statutorily liable for the unpaid assessments. Metro POA further argues that the obligation imposed under section 18-13-116(d) is of a personal nature and that a foreclosure does not extinguish a direct, personal liability.

The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *McLemore v. Weiss*, 2013 Ark. 161, ___ S.W.3d ___. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct. *Id.* The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the drafting body. *Richard v. Union Pac. R.R. Co.*, 2012 Ark. 129, 388 S.W.3d 422. In reviewing issues of statutory interpretation, we first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McLemore*, 2013 Ark. 161, ___ S.W.3d ___. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* It is axiomatic that this court strive to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179.

The Horizontal Property Act is codified at Arkansas Code Annotated sections 18-13-101 to -120 (Repl. 2003), and provides for mandatory pro rata contributions from property owners within a horizontal property regime for "the expenses of administration and of maintenance and repair of the general common elements." *See* section 18-13-116(a)(1).

SLIP OPINION

Subsections (c) and (d) of section 18-13-116 are at issue in the instant case and provide as follows:

> (c) Upon the sale or conveyance of an apartment, all unpaid assessments against a co-owner for his or her pro rata share in the expenses to which subsection (a) of this section refers shall first be paid out of the sales price or by the acquirer in preference over any other assessments or charges of whatever nature except the following:
>
> > (1) Assessments, liens, and charges for taxes past due and unpaid on the apartment; and
> >
> > (2) Payments due under mortgage instruments of encumbrance duly recorded.
>
> (d) The purchaser of an apartment shall be jointly and severally liable with the seller for the amounts owing by the latter under subsection (a) of this section up to the time of the conveyance, without prejudice to the purchaser's right to recover from the other party the amounts paid by him or her as the joint debtor.

Ark. Code Ann. § 18-13-116(c), (d).

First State asserts that the plain language of subsection (d) demonstrates that this subsection is not applicable in a foreclosure sale. According to First State, the provision in this subsection that the purchaser shall be liable with the seller for the amounts owing demonstrates that this applies only in an ordinary sale, because neither the circuit clerk appointed as the commissioner nor the mortgagee owe any money that may be imputed to the purchaser. Moreover, First State argues that the circuit court's interpretation of this provision would effectively nullify subsection (c)'s requirement that a mortgage be given priority over other liens. In other words, to read subsection (d) as making a purchaser at a foreclosure sale liable for unpaid assessments would nullify the special position given to a mortgagee under subsection (c).



Clearly, under subsection (c), when a unit is sold, the money due and owing under a mortgage takes priority over any unpaid assessments. Turning now to subsection (d), we see that it provides that a "purchaser of an apartment shall be jointly and severally liable with the seller for the amounts owing by the latter." There is nothing in the plain language of this provision that supports First State's assertion that subsection (d) does not apply to a mortgage foreclosure sale. We are bound by our rules to give the words in the statute their plain and ordinary meaning. *McLemore*, 2013 Ark. 161, ___ S.W.3d ___. Moreover, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *See id.* First State asks us to read words into subsection (d) that simply are not there. Thus, in light of the plain language of the statute, we cannot say that the circuit court erred in refusing to extinguish Metro POA's interest.

First State's second point on appeal is that the circuit court erred in awarding attorney's fees to Metro POA in the amount of $1,500. First State argues that Metro POA asserted entitlement to such fees based on language in the master deed and bylaws but, because Metro POA did not comply with those bylaws, it is not entitled to attorney's fees. More specifically, First State asserts that because Metro POA never obtained a lien for the unpaid assessments, as required in the bylaws, it cannot seek attorney's fees. Metro POA counters that it was not required to file any such lien or "notice of delinquent assessment" to be entitled to attorney's fees. According to Metro POA, the fee award was a "lawfully agreed upon" expense

SLIP OPINION

authorized by the Horizontal Property Act, as demonstrated by this court's decision in *Damron v. Univ. Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402 (1988).

This court follows the American rule, which requires every litigant to bear his or her attorney's fees absent statutory authority or a contractual agreement between the parties. *See Carter v. Cline*, 2013 Ark. 398, ___ S.W.3d ___. Because of the circuit court's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, we usually recognize the superior perspective of the circuit court in determining whether to award attorney's fees. *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, 378 S.W.3d 135. The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Id.*

Here, First State's only argument challenging the award of attorney's fees is that Metro POA did not comply with its bylaws and seek a lien for the unpaid assessments and thus cannot avail itself of the bylaws for support in seeking attorney's fees. This argument is unavailing, as nothing in section 18-13-116 required Metro POA to obtain a lien, and, in any event, Metro POA filed a lis pendens with regard to its claimed interest in the property. Accordingly, based on the argument presented to this court, we cannot say that the circuit court abused its discretion in awarding attorney's fees to Metro POA.

Affirmed.

GOODSON, J., dissents.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** A review of the record in this case discloses the absence of a judgment reflecting the amount of the unpaid assessments owed by First State Bank as the purchaser of the condominium unit. As such, there is no final order upon which to appeal the circuit court's ruling that any purchaser of the condominium unit at the foreclosure sale would be liable for the unpaid assessments. Therefore, I must respectfully dissent, as the nonexistence of a final order deprives this court of jurisdiction to decide the question of law presented on appeal.

The amended foreclosure decree entered on January 16, 2013, sets out the circuit court's previous ruling that any prospective purchaser of the condominium unit at the foreclosure sale would be liable for the payment of the delinquent assessments. Specifically, the amended decree provides in relevant part that the "purchaser of said property shall be liable for the assessments of $233.33 per month for the time period of November 2011 to the date of foreclosure." It also states, by parenthetical, that "[i]n order to have the precise amount of assessments remaining unpaid as of the date of the foreclosure sale, five (5) days prior to the foreclosure sale, Metro POA shall certify in writing to the Commissioner, with a copy to the Plaintiff, the amount of unpaid assessments incurred from the date of the Judgement to the date of the foreclosure sale."

On March 22, 2013, the circuit court entered an order awarding attorney's fees to Metro POA. This order includes the statement that "[a]t trial, the amount of assessments owed to Metro was determined to be $3,266.62." Subsequently, on March 25, 2012, Metro POA filed a "Certification," pursuant to the circuit court's directive contained in the

SLIP OPINION

amended decree. The Certification stated that the amount of the unpaid assessments was $3,966.61. Then on April 4, 2013, the circuit court entered an amended fee order, which again includes the statement that the amount of the unpaid assessments totalled $3,266.62.

The amended order of foreclosure contains a clear ruling that any prospective purchaser would be required to pay the delinquent assessments. What is not clear from this record is the actual amount of the unpaid assessments that the purchaser is obligated to pay. The record is unclear because, as of yet, the circuit court has not reduced the amount owed to judgment.

With exceptions not applicable here, an appeal may be taken only from a final judgment or decree entered by the trial court. Ark. R. App. P.–Civ. 2(a)(1) (2013). For a judgment to be final and appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Kelly v. Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992); *Jackson v. Yowell*, 307 Ark. 222, 818 S.W.2d 950 (1991). An order is not final and appealable merely because it settles the issue as a matter of law. *See Festinger v. Cantor*, 264 Ark. 275, 571 S.W.2d 82 (1978). Even though the issue decided might be an important one, an appeal will be premature if the decision does not, from a practical standpoint, conclude the merits of the case. *Robinson v. Villines*, 2013 Ark. 211. To be final, an order must not only decide the rights of the parties, but also put the court's directive into execution, ending the litigation or a separable part of it. *Kilgore v. Viner*, 293 Ark. 187, 736 S.W.2d 1 (1987).

SLIP OPINION

In *Ford Motor Co. v. Washington*, 2013 Ark. 88, we had occasion to discuss what is necessary for an order to be considered final when a party is obligated to pay a sum of money. We observed,

> In *Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967), we explained the formal requirements of what constitutes a final judgment. To be final, a judgment for money must state the amount that the defendant is required to pay. *Id*. In citing Arkansas statutory law, we said that the amount of the judgment must be computed, as near as may be, in dollars and cents and that the judgment must specify clearly the relief granted or other determination of the action. *Id*.; see also Ark.Code Ann. § 16–65–103 (Repl.2005) (declaring that all judgments or decrees shall be computed, as near as may be, in dollars and cents). In *Thomas*, we noted that a final judgment or decision is one that finally adjudicates the rights of the parties, and it must be such a final determination as may be enforced by execution or in some other appropriate manner. *See also Villines v. Harris*, 362 Ark. 393, 208 S.W.3d 763 (2005) (holding that, although a previous order set out a formula for calculating damages, the order was not final because it did not establish the amount of damages); *Office of Child Support Enforcement v. Oliver*, 324 Ark. 447, 921 S.W.2d 602 (1996) (holding that an order was not final where an arrearage in child support was found but the amount of the arrearage was not determined); *Hastings v. Planters & Stockmen Bank*, 296 Ark. 409, 757 S.W.2d 546 (1989) (holding that an order of summary judgment was not final where the amount owed was not specified in dollars and cents, there were issues that appeared to be outstanding, and the judgment did not dismiss or discharge the appellant).

*Ford*, 2013 Ark. at 3. Based on these principles, this court in *Ford* held that a judgment which merely reproduced the jury's verdict without assigning how much was owed in dollars and cents was not a final, appealable order. Consequently, we dismissed the appeal.

By the same token, the amended decree in this case sets out a formula by which the amount of the unpaid assessments was to be calculated. However, the circuit court has not entered a judgment setting forth the specific dollar amount to be paid by the purchaser at the foreclosure sale. Metro POA's Certification is demonstrably not a judgment. There is also

an element of confusion as to the amount owed given the different figures stated in the Certification and the orders granting attorney's fees.

Even if neither party raises the issue of jurisdiction on appeal, the appellate court is obligated to raise the issue sua sponte. *Elis v. Ark. State Highway Comm'n*, 2010 Ark. 196, 363 S.W.3d 321. From my review of this record, I can only conclude that a final order is lacking in this case, and I would dismiss the appeal. As I joined the majority in *Ford*, I must dissent in this case. Fairness dictates that this court's application of the rules concerning finality should be applied equally to all litigants and not conveniently ignored.

*Conner & Winters, LLP*, by: *Todd P. Lewis* and *Kerri E. Kobberman*, for appellant.

*Knight Law Firm, PLC*, by: *K. Vaughn Knight* and *Mason J. Wann*, for appellees