

# SUPREME COURT OF ARKANSAS

No. CR–14–242

| | |
|---|---|
| WILLIAM O. JAMES, JR.<br>APPELLANT | **Opinion Delivered** June 26, 2014 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CR-13-224] |
| PULASKI COUNTY CIRCUIT<br>COURT, FIFTH DIVISION<br>APPELLEE | HONORABLE WENDELL L.<br>GRIFFEN, JUDGE<br><br>AFFIRMED IN PART; REVERSED<br>AND DISMISSED IN PART. |

**KAREN R. BAKER, Associate Justice**

This appeal stems from a June 2013, manslaughter trial against Joshua Hastings in Pulaski County Circuit Court. William O. James, Jr., is an attorney who represented Hastings at trial. During the trial, Wendell Griffen, the presiding judge in the case, found James guilty of a total of ten contempt violations. James was originally fined $2,500 per violation, but in a February 25, 2014 order, the circuit court reduced that amount to $500 per violation.

Hastings was a Little Rock police officer and was charged with the August 12, 2012 death of Bobby Moore III. While on duty on August 12, 2012, Hastings fired shots into a car occupied by three passengers: Moore, Jeremiah Johnson, and Keontay Walker. Moore died as a result of his injuries, and Hastings was charged with manslaughter. Johnson and Walker were the prosecution's key witnesses. Prior to trial, on June 11, 2013, Hastings filed

SLIP OPINION

a motion asking to be allowed to cross-examine Johnson and Walker concerning their juvenile and probationary statuses. The circuit court heard arguments on the motion and denied Hastings's motion. On June 13, 2013, Hastings filed a motion for reconsideration, and on June 14, 2013, the State responded. On June 17, 2013, the circuit court heard arguments on the motion and response, and on June 18, 2013, the circuit court reversed its prior ruling and ruled that Hastings could cross-examine Johnson and Walker. The ruling from the bench was as follows:

> The defense may cross-examine witnesses . . . Johnson and . . . Walker about the fact that they were on probation in juvenile court for the purpose of challenging their credibility on the grounds of bias or motive.
>
> The defense may not specify the offenses on which the probation was based, nor may the defense refer to any other offenses, juvenile offenses.
>
> The defense is only permitted to inquire of the juvenile witnesses Johnson and Walker for the purpose of establishing or challenging credibility on grounds of bias or motive but not for the purpose of showing state of mind as to those witnesses at the time of the occurrence or for the purpose of establishing their character.

During opening statements, following an objection by the State, the circuit court announced that James had violated its order and held him in contempt. The trial continued and ended with a hung jury on Sunday, June 23, 2013. Immediately thereafter, the circuit court declared a mistrial, dismissed the jury, and announced that nine other contempt violations had occurred during the course of the trial.

On June 24, 2013, James filed a motion to vacate contempt findings. On June 25, 2013, the circuit court denied James's motion. From the circuit court's contempt order and the denial of James's motion to vacate contempt findings, James appealed to this court. On

February 10, 2014, we dismissed the appeal, concluding that the lack of a final contempt order precluded an appeal. On February 25, 2014, the circuit court entered a final order, "Memorandum Opinion and Entry of Contempt Order Against William O. James, Jr." On February 28, 2014, James filed an amended motion asking to vacate the contempt findings to clarify the circuit court's previous order because the circuit court had reduced the fines. On March 7, 2014, the circuit court denied James's amended motion. From those orders, James appeals.

James presents five issues on appeal: (1) the contempt citations violated his constitutional and statutory rights of notice and opportunity to be heard; (2) nine of the ten contempt citations are invalid because the circuit court failed to contemporaneously warn James of the alleged violations and because they violate the contemporaneous–objection rule; (3) the circuit court did not immediately act on the alleged violations but entered an order on Sunday, which the circuit court was statutorily prohibited from doing; (4) James's statements were not violations of the circuit's order; and (5) the circuit court's order restricting examination of prosecution witnesses was unconstitutional as a matter of law and therefore the contempt citations must be reversed and dismissed.

We have jurisdiction of this matter pursuant to Ark. Sup. Ct. R. 1–2(a)(1) and (2) as the appeal presents an issue involving the interpretation of the constitution and the discipline of attorneys.

As a preliminary matter, we must first determine whether the contempt at issue is criminal in nature or civil in nature. In *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275

3



(1988), we explained,

> The critical features which determine the nature of the proceeding are (1) the substance of the proceeding and (2) the character of the relief.
>
> The purpose of a criminal contempt proceeding is that it is brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. . . . The character of the relief, rather than the trial court's characterization of the substantive proceeding, becomes the critical factor in determining the nature of the proceeding for due process purposes. The Supreme Court of the United States has clearly set out the distinction between the types of relief:
> . . .
>
>> The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Penfield Co. v. SEC*, 330 U.S. 585, 593(1947).

*Fitzhugh*, 296 Ark. at 138–40, 752 S.W.2d at 276–77 (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624,631–32 (1988)).

Here, James's fine is unconditional and is to be paid to the court. Therefore, the punishment is punitive, and the contempt is criminal in nature.

For his first point on appeal, James asserts that the contempt citations violated his constitutional and statutory rights of notice and opportunity to be heard. The circuit court responds that James failed to preserve the issue for review and that the argument is without merit.

The standard of review in a case of criminal contempt is well settled: an appellate court views the record in the light most favorable to the trial judge's decision and sustains that decision if it is supported by substantial evidence. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007). Substantial evidence is evidence of a sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. *Id.*;

4

*Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995). Where a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *Conlee, supra.*

Additionally, a review of the application and interpretation of a statute, such as the statute defining contempt, is a question of law, which this court decides de novo. *McLemore v. Weiss*, 2013 Ark. 161. We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct. *Id.* The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the drafting body. *Richard v. Union Pac. R.R. Co.*, 2012 Ark. 129, 388 S.W.3d 422.

We turn now to the facts of this case and the applicable statute, Ark. Code Ann. § 16-10-108 (Repl. 2010), "Contempt," states in pertinent part:

> (a) Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts and no others:
>
> . . .
>
> (3) Willful disobedience of any process or order lawfully issued or made by it;
>
> . . .
>
> (b)(1) Punishment for contempt is a Class C misdemeanor.
>
> (c) Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense.

In reviewing the statute and the record, we note that the circuit court announced its

SLIP OPINION

contempt findings at two different times, during James's opening statement and at the close of the trial.

During opening statement, the following exchange occurred:

| | |
|---|---|
| DEFENSE COUNSEL: | And when he gets there, they're gone and I think Mr. Johnson said they ran because they were afraid they were going to get shot and that may be part of their fear, but I think the evidence will show there was a whole lot of other fear and one of them is afraid they're just going to get caught. |
| | They're on probation. I'm not going to call these boys a bunch of names. I'm just going to say it as it is. They're on probation, juvenile probation. They're committing felonies. |
| PROSECUTOR: | Your Honor, approach? |
| THE COURT: | You may. |

(The following conference was held at the bench outside the hearing of the jury.)

| | |
|---|---|
| PROSECUTOR: | Your Honor, he's talking about them fleeing from the parking lot in conjunction with the night. It has nothing to do with their bias towards the police department – |
| DEFENSE COUNSEL: | I will move on. I did go into that, Your Honor. |
| THE COURT: | He's making an objection. |
| PROSECUTOR: | – – that it had nothing to do with the bias of the police department with regard to how they were telling why they told their stories a certain way. |
| THE COURT: | The objection is sustained. Mr. Johnson's objection is sustained. |
| | Mr. James, the Court has been very emphatic in its ruling yesterday evening and in its chambers conversation with |

> counsel yesterday morning that evidence of the juvenile's probationary status is permissible for cross examination on bias and motive with regard to testimony but not with regard to their character or how they may have acted at the scene.
>
> Your argument is in direct violation of that. You will immediately move to another subject. I will take up the issue of sanctions after this trial, but I'm holding you in contempt. Go.

PROSECUTOR:          Thank you, your Honor.

This rendition of the first contempt finding from the record is the complete record verbatim. In reviewing this first contempt citation, it is clear to us that the circuit court found that, in the immediate view and presence of the court, James willfully violated the circuit court's order, and the circuit court summarily held James in contempt but deferred the specific punishment until after the trial. The record also demonstrates that prior to the finding of contempt, he called into question the character of Johnson and Walker when he said:

> They're on probation. I'm not going to call these boys a bunch of names. I'm just going to say it as it is. They're on probation, juvenile probation. They're committing felonies.

Thus, James violated the order in the immediate view and presence of the court. Therefore, the circuit court had the authority to punish James summarily for contempt. Further, it appears that James did not contest that this statement was a violation of the circuit court's ruling when he stated: "I will move on. I did go into that, Your Honor." Because this was a summary contempt proceeding, we hold that the circuit court did not deprive James of his statutory and constitutional rights to notice and an opportunity to be heard, and we affirm the circuit court on this point as to the first contempt citation.

7



*Remaining Points on Appeal for Contempt Citation Number One*

We next turn to James's remaining points on appeal regarding the first contempt citation. For his third point on appeal regarding the first contempt citation,[1] James contends that the circuit court's contempt order is invalid because it was entered on a Sunday, which is in violation of Ark. Code Ann. § 16-10-114 (Repl. 2010), "Courts not to be open on Sunday – Exceptions." The circuit court responds that this argument is without merit because Ark. Code Ann. § 16-10-114 authorizes the actions on a Sunday when they occur in conjunction with jury deliberations.

At issue is Ark. Code Ann. § 16-10-114, which provides:

(a) No court shall be opened or transact business on Sunday unless it is for the purpose of receiving a verdict or discharging a jury.

(b) Every adjournment of a court on Saturday shall always be to some other day than Sunday, except such adjournment as may be made after a cause has been committed to a jury.

(c) This section shall not prevent the exercise of the jurisdiction of any magistrate when it may be necessary in criminal cases to preserve the peace or arrest the offenders; nor shall this section inhibit the exercise of the jurisdiction of any magistrate on Sunday in disposing of misdemeanor cases where the defendant desires to and does enter a plea of guilty or a plea of nolo contendere.

Here, the record demonstrates that the jury in the underlying criminal action against Hastings was deliberating over the weekend as the circuit court convened the jury for deliberations on Sunday, June 23, 2013. The circuit court's docket notes demonstrate that on June 22, 2013, having been unable to reach a verdict, the jury returned at 12:00 noon on

---

[1]James's second point on appeal does not pertain to the first contempt citation.

Sunday, June 23, 2013, to continue deliberations. On Sunday, June 23, 2013, at 5:29 p.m., the jury ceased deliberations as it ended in a hung jury. The circuit court brought the jury in, received its decision, declared a mistrial, and then issued the contempt sanction. A review of the record demonstrates that the contempt citation for the first violation was addressed in connection with receiving the verdict and the jury's deliberations. Accordingly, we do not find merit in James's "Sunday" argument.[2]

For his fourth point on appeal regarding the first contempt citation, James asserts that his conduct in the first contempt citation was not in violation of the circuit court's order. However, as previously discussed, the record demonstrates that James both violated and acknowledged that he violated the circuit court's order. Therefore, we find no merit in this argument.

For his fifth and final point on appeal regarding the first contempt citation, James asserts that the underlying order restricting cross–examination of the prosecution's witnesses was unconstitutional as a matter of law. However, over 100 years ago, in *Meeks v. State*, 80 Ark. 579, 98 S.W. 378 (1906), we explained the even then long-standing principle that a circuit court's order must be obeyed while it remains in force. Now as in *Meeks*, the fact that an order may be erroneous will not excuse disobedience on the part of those who are bound by its terms. *Id.*

Accordingly, we find no error and affirm the circuit court with respect to the first

---

[2]We further note that James's argument is without merit because the contempt citations from June 23, 2013, were read orally from the bench. This order was later memorialized in a written order on February 25, 2014, a Tuesday.

9

SLIP OPINION

contempt citation of James.

*Remaining Contempt Citations*

Next, with regard to the nine remaining contempt citations, each was rendered at the close of the trial, after the circuit court had declared a mistrial. To be clear, the contempt citations were not rendered when the alleged conduct occurred during the trial, but at the close of trial. The following is the record verbatim in its entirety:

THE COURT: On June 11th, this Court had a pretrial hearing in which the Court, among other things, addressed the motion from the defense in limine to permit the disclosure and/or reference to the juvenile records of state witnesses Jeremiah Johnson and Keontay Walker.

The Court initially ruled that it would not allow the defense to make any inquiries. The Court received a timely request from the defense on June 13th to reconsider its ruling.

The Court entertained that request. The request was based upon the decision of the United States Supreme Court in the case of Davis versus Alaska, 415 U.S. 308, a 1974 case. Mr. Berry argued persuasively. The Court began voir dire in this case, as counsel will recall, on June 17th and at the end of the voir dire on that day reaffirmed its ruling, denying the defense request.

On the morning of June 18, the Court called counsel into its chambers and informed counsel that the Court had reconsidered its ruling and based upon that reconsideration, the Court reversed itself and granted the defense motion with regard to the juvenile records of Jeremiah Johnson and Keontay Walker.

In doing so, the Court stated as follows: The defense may cross-examine witnesses Jeremiah Johnson and Keontay Walker about the fact that they were on probation in juvenile court for the purpose of challenging their credibility on the grounds of bias or motive.

The defense may not specify the offenses on which the probation

10

was based, nor may the defense refer to any other offenses, juvenile offenses.

The defense is only permitted to inquire of the juvenile witnesses Johnson and Walker for the purpose of establishing or challenging credibility on grounds of bias or motive but not for the purpose of showing state of mind as to those witnesses at the time of the occurrence or for the purpose of establishing their character.

That was the ruling the Court made in response to the defense motion in limine and on reconsideration of the Court's ruling denying that motion in limine.

I asked at that time, Mr. James, do you need to make a record with regard to the Court's ruling. Mr. James, you answered, "No, Your Honor." I later asked "does the defense understand the court's ruling?" Mr. James, you answered "We understand it, Your Honor."

I concluded with this statement: "I want to make sure on the record that this is preserved so for the purpose of any review subsequent that issue is preserved, also to make sure that everyone understands that the Court will not allow any tolerance of that."

Mr. James, you answered, "Thank you, Your Honor."

On June 19, the next morning, during the defense opening statement, Mr. James you made this statement: "And when he gets there, they're going to – – and I think Mr. Johnson said they ran because they were afraid they were going to get shot and that may be part of that fear, but I think the evidence will show there was a whole lot of other fear and one of them is they're just going to get caught. They're on probation. I'm not going to call these boys a bunch of names. I will say it as it is. They're on probation juvenile probation. They're committing felonies."

At that time, Mr. Johnson, you objected and you reminded the Court that Mr. James's remark was talking about fleeing from the parking lot in conjunction with the night of the occurrence and you said, quote, it has nothing to do with their bias at the police

11

department. It has nothing to do with the bias of the police department with regard to how they were telling – – they told their stories a certain way.

The Court sustained the objection and I made this remark to you at that time, Mr. James, "Mr. James, the Court has been very emphatic in its ruling yesterday evening and in its chambers conversation with counsel yesterday morning that evidence of the juveniles's probationary status is permissible for cross examination on bias and motive with regard to testimony but not with regard to their character or how they may have acted at the scene. Your argument is in direct violation of that. You will immediately move to another subject. I will take up the issue of sanctions after this trial, but I'm holding you in contempt."

Notwithstanding the fact that the Court held Mr. James in contempt when Jeremiah Johnson was cross-examined, Mr. James on the second page of the cross examination, you asked this question: "You weren't really worried about getting caught?

"Yes, sir."

You violated the Court's ruling. And for violating the Court's ruling with regard to the opening statement, the Court hereby fines you $2,500.

For violating the Court's ruling with regard to the question of Jeremiah Johnson about getting caught, the Court fines you $2,500.

On Page 6 of the cross examination, you asked "I mean, you didn't want to get arrested did you?

"No, sir.

"I mean did you know what you were doing was wrong?

"Yes, sir.

"Did you know if you got caught you might get in trouble?

12

"Yes, sir.

"Did you know that if you might get caught, you might go to jail?

"Yes, sir."

For violating the Court's ruling in that regard the Court fines you $2,500.

Later in the same cross examination, "were you concerned about fact that you had been caught committing felonies?

"No, sir, not at all."

Another direct violation of the court's ruling.

The Court fines you $2,500.

Later in the cross examination, "would you agree with me that no matter what, you don't want to get caught?

"Yes, sir."

The Court fines you $2,500.

Next page, "did you have any reason to believe they didn't want to get caught?"

$2,500.

"Are you concerned then about the possibility of someone seeing you – –

"No, sir.

"– – getting caught?

"No, sir."

The Court fines you $2,500.

13

Page 18, "at what point do you decide you're no longer concerned about getting caught?

"After we're leaving."

The Court fines you $2,500.

"At this point, do you still feel like you've gotten away with it, don't have anything to worry about?

"Yes, sir.

"Why did you all split up?

"Because if you run with somebody else, you're going to get caught."

You asked the question "again, when this is all said and done, the last thing you want to have happen is get caught, right?"

2,500, Mr. James.

And then your closing argument, you said "these young men were not kids out after a high school game toilet-papering someone's house. They were out roaming around while the rest of the people in Little Rock slept, stealing, committing adult felonies, committing adult crime. It's important to put all of this in context. The last thing they wanted was to get caught."

Fine you $2,500.

And let me be very, very clear. I was intentional when we had our conference on the 18th when I said the defense is only permitted to inquire of the juvenile witnesses Johnson and Walker for the purpose of challenging or establishing credibility on grounds of bias or motive but not for the purpose of showing state of mind as to those witnesses at the time of the occurrence or for the purpose of establishing their character.

The reason I made that language was that was the very grounds for the defense motion for reconsideration was based.

14

Cite as 2014 Ark. 305

The court was asked to reconsider its ruling in limine based upon the Davis versus Alaska holding, which explicitly addresses the issue of bias and motive, and the court granted the relief the defense sought and in the face of getting the relief that the defense sought, the defense still disobeyed the Court's limitation.

Mr. James, I will tell you that I do not like doing this because, quite frankly, I expect better of lawyers in this court. I expect lawyers to obey the Court's rules. I expect lawyers who tell me they understand my rulings to follow them. I expect lawyers who get the relief they ask for to live within the relief they get.

And when the lawyers don't do that and then are held in contempt and then persist in doing the very thing that they're held in contempt by, I realize it's not an accident.

The last thing I will say about this is, as you might imagine, I have given some thought to whether or not a fine or jail would be the appropriate remedy.

I decided against jail for two main reasons: Number One, Mr. James, your client, Mr. Hastings needs your services. We have a new trial and if I gave you five days of jail time for every time I held you in contempt, we would be putting the trial off.

But, number two, I don't think that it will make any difference. I think the fine is sufficient. You can prove me wrong. I hope you won't, but I hope we understand each other.

When I rule, you obey and if you can't, I can issue the sanctions accordingly.

James asserts that the circuit court erred because he was not afforded his constitutional and statutory safeguards at the June 23, 2013 hearing when the court announced the contempt citations, and "there was nothing [he] could have said," as he would have been required to interrupt the judge. Relying on *Taylor v. Hayes*, 418 U.S. 488 (1974), James argues that the circuit court "ambushed" him and that he could not have responded. The circuit court

15

responds that James did not contemporaneously object to the citations, but instead first belatedly objected to the citations in his motion for new trial and to vacate contempt findings; thus he failed to preserve a review by this court.[3] The circuit court also responds that James's arguments are without merit.

In addressing James's arguments, we are guided by our law on criminal contempt and notice, we explained in *Ivy v. Keith*, 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002), that

> [o]ur constitution and case law make it clear that the courts of this state have inherent power to punish a contemnor for contempts committed in the presence of the court or in disobedience of process. Ark. Const. art. 7, § 26. *See also Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000)]; *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993); *Yarbrough v. Yarbrough*, 295 Ark. 211, 748 S.W.2d 123 (1988). This inherent power goes beyond the statutory authority provided by § 16-10-108. There is no question that willful disobedience of a valid order of a court is contemptuous behavior. Ark. Code Ann. § 16-10-108(a)(3) (Repl. 1999). Before a person can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *E.g.*, *Lilly v. Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989). We have observed in the past that contempt is a matter between the judge and the litigant, and not between the two opposing litigants. *See Hickinbotham v. Williams*, 228 Ark. 46, 305 S.W.2d 841 (1957).

In *Fitzhugh*, 296 Ark. 137, 140, 752 S.W.2d 275, 277 (1988), we explained the

> fundamental proposition that criminal penalties may not be imposed on an alleged contemner who has not been afforded the protections that the Constitution requires of criminal proceedings. [citing *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624 (1988).] The Due Process Clause, as applied in criminal proceedings, requires that an alleged contemner be notified that a charge of contempt is pending against him and be informed of the specific nature of that charge. *Id*.

In *Arkansas Department of Human Services v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998)

---

[3]While recognizing the circuit court's contemporaneous objection argument, we are convinced by our review of the record, that any objection would have been futile as the circuit court summarily rendered its contempt citations. *See Taylor*, 418 U.S. 488.

we held:

> Ark. Code Ann. § 16-10-108, . . . sets forth the court's power to punish for criminal contempt and provides in part that 'the party charged shall be notified of the accusation and shall have a reasonable time to make his defense. Moreover, the Due Process Clause requires that an alleged contemnor be given notice of the charge of contempt pending against him and be informed of the specific nature of the charge.

*Id.*, at 539–40, 970 at 237 (1998) (citing *Fitzhugh*, 296 Ark. 137, 752 S.W.2d 275).

Further, we find persuasive the reasoning in *Sacher v. United States*, 343 U.S. 1, 8 (1952), where in addressing summary criminal contempt pursuant to Rule 42 of the Federal Rules of Criminal Procedure, the United States Supreme Court explained,

> Summary punishment always, and rightly, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes. But the very practical reasons which have led every system of law to vest a contempt power in one who presides over judicial proceedings also are the reasons which account for it being made summary. Our criminal processes are adversary in nature and rely upon the self-interest of the litigants and counsel for full and adequate development of their respective cases. The nature of the proceedings presupposes, or at least stimulates, zeal in the opposing lawyers. But their strife can pervert as well as aid the judicial process unless it is supervised and controlled by a neutral judge representing the overriding social interest in impartial justice and with power to curb both adversaries. The rights and immunities of accused persons would be exposed to serious and obvious abuse if the trial bench did not possess and frequently exert power to curb prejudicial and excessive zeal of prosecutors. The interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.

In *Taylor*, *supra*, the United States Supreme Court addressed a criminal-contempt finding when the contemptor was not allowed to respond to the court's charges and not afforded the necessary due-process requirements. The court explained:

> The provision of fundamental due process protections for contemnors accords with our historic notions of elementary fairness. While we have no desire 'to imprison the discretion of judges within rigid mechanical rules,' *Offutt v. United States*, 348 U.S. at 15, we remain unpersuaded that 'the additional time and expense possible involved .

17

SLIP OPINION

. . will seriously handicap the effective functioning of the courts.' *Bloom v. Illinois*, supra, 391 U.S., at 208–209. Due process cannot be measured in minutes and hours or dollars and cents. For the accused contemnor facing a jail sentence, his 'liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.' *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

*Taylor*, 418 U.S. at 500.

Finally, our review of Ark. Code Ann. § 16-10-108(c), the statute at issue here, requires that we construe criminal statutes strictly, resolving any doubts in favor of the defendant. *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). "We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation." *Walden v. State*, 2014 Ark. 193, at 7–8, ___ S.W.3d ___.

With these standards identified, we review contempt citations two through ten. Citations two through nine were rendered four days after the violations had allegedly occurred. The tenth and final citation was rendered one day after the violation had allegedly occurred.

The plain language of Ark. Code Ann. § 16-10-108(c) provides: "Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense." A plain reading of this statute is that when a contumacious act occurs within the immediate view and presence of the court it may be punished summarily. "Summarily" is defined as "performed speedily and without ceremony; summary

18

justice." *American Heritage Dictionary*, 1733 (4th ed. 2000). "Immediate" is defined as "without delay." *Id*. at 877. However, in the case of contempt that is not announced immediately at the time of the offense by the circuit court, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense. *See* Ark. Code Ann. § 16-10-108(c).

Thus, Ark. Code Ann. § 16-10-108(c) is entirely consistent with the inherent power of the court to summarily punish contumacious conduct occurring in its presence. This power is necessary to enforce the authority of the court and to protect the dignity of the proceedings before it. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 513 (1974) ("There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an 'actual obstruction of justice,' *In re McConnell*, 370 U.S. 230, 236 (1962); *see also In re Little*, 404 U.S. 553, 555 (1972), convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur."). However, when the contumacious conduct has occurred in the past, even though it may have occurred in the presence of the court, the need to punish summarily is not present. In those cases, criminal penalties may not be imposed on the alleged contemner who has not been afforded the protections that the constitution requires of criminal proceedings, including notice and a reasonable time to make his defense. *See Sacher, supra.*

Here, in reviewing the record with Ark. Code Ann. § 16-10-108(c) and our case law, the circuit court's announcement of contempt citations two through ten did not occur "immediately." The plain language of the statute indicates that to summarily hold someone

19

in contempt, the citation must be issued without delay; otherwise, the contemnor must be given notice and reasonable opportunity to defend himself. Therefore, based on Ark. Code Ann. § 16-10-108(c) and the constitutional safeguards previously discussed, the circuit court was required to notify James of the accusation and provide James a reasonable time to make his defense. Here, the record demonstrates that the circuit court erred by denying James notice and a reasonable time to make his defense.

Further, a careful review of the record demonstrates that James's conduct did not violate the circuit court's order. "Before a person can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *E.g.*, *Lilly v. Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989)." *Ivy*, 351 Ark. at 279, 92 S.W.3d at 677 (2002). Here, the order stated in pertinent part that James was not permitted to ask the witnesses "about the fact that they were on probation in juvenile court . . . or specify the offenses on which the probation was based," or "refer to any other offenses, juvenile offenses" for the purpose of showing their character or establishing their state of mind at the time of the occurrence. James was not precluded by the order from inquiring as to the witnesses' state of mind at the time of the occurrence, but rather was prohibited from using their juvenile probationary status to establish their state of mind or character. James cannot be held in contempt for not following what the circuit court meant to order, but can only be held in contempt for violating the circuit court's express commands. Based on the record before us, we cannot say that James's conduct violated the circuit court's order and therefore, substantial evidence does not support the circuit court's finding of

contempt.

Based on our discussion, we reverse and dismiss citations two through ten, and do not reach James's remaining points on appeal with regard to those citations.

Affirmed in part; reversed and dismissed in part.

HOOFMAN, J., concurs without opinion.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.