

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-43

| | |
|---|---|
| | Opinion Delivered May 10, 2017 |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 44JV-16-64-3] |
| V. | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APRIL AND RICKY HELLYER AND MINOR CHILD | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

The Arkansas Department of Human Services (DHS) appeals an order finding County Supervisor Denise Gibson in contempt of court and ordering her to complete 160 hours of community service, imposing a suspended sentence of three days in the county jail, and imposing a $200 fine to be paid by providing $200 worth of children's books to the court. On appeal, DHS argues that (1) Gibson was not provided sufficient notice and opportunity to defend the criminal-contempt charges in violation of her due-process rights, (2) the circuit court's finding of contempt is not supported by substantial evidence, and (3) the fine of $200 worth of children's books is not a proper sanction. We affirm.

On 6 September 2016, the Madison County Circuit Court exercised an emergency seventy-two-hour hold on twelve-year-old A.H. as part of an ongoing Family In Need of Services (FINS) case. The order explained that A.H.'s parents and grandparents could not

meet her mental-health needs; that all placement options had been exhausted; and that the parents agreed to placement with DHS with the goal of reunification with the family. The court's order was not followed, however, and A.H. was returned to her family that night.

Two days later, on September 9, A.H.'s attorney ad litem filed a motion for citation of contempt against DHS, alleging that Denise Gibson, the DHS county supervisor, had authorized caseworker Antoinette (Toni) Johnson to release A.H. to her parents and that such action was in direct violation of the court's order. The motion asked that DHS be ordered to appear and show cause why it should not be held in criminal contempt. DHS filed a general denial to the allegations in the motion.

The court held a show-cause hearing on September 23. Niki Rowland, the Madison County juvenile probation and FINS officer, testified that after the court issued its order exercising the seventy-two-hour hold, she contacted DHS caseworker Toni Johnson and asked her to pick up A.H. at the regional juvenile detention center (JDC). Rowland said she left a copy of the court's order at JDC as well. Later that afternoon, Rowland received a message from Johnson asking for A.H.'s grandmother's phone number; Rowland returned the call but got Johnson's voicemail. The next day, Rowland contacted Johnson and found out that A.H. had been returned to her parents. On cross-examination, Rowland confirmed that it was her understanding that it was Johnson who had returned A.H. to her family. According to Rowland, Johnson said that she had spoken to her supervisor and with the DHS attorney "and that's what they had advised her to do."

Toni Johnson testified that on September 6, at approximately 1:30 p.m., she was informed by Rowland that Judge Zimmerman had taken a seventy-two-hour hold on A.H.

and that the judge wanted A.H. put into a group home or some other appropriate placement. Johnson called Vantage Point about getting A.H. assessed; she also called her supervisor, Denise Gibson, who told her that "the Judge cannot take a hold on a delinquent." Johnson said that Gibson instructed her to call the DHS attorney, Rielle Parrish, to discuss it. Johnson arrived at JDC around 5:00 p.m. and picked up A.H. along with the court order. Johnson said she briefly looked at the order but did not speak to Gibson or Parrish again; instead, she drove A.H. to her grandparents' home, which is adjacent to her parents' home. Johnson stated that Gibson never asked to see the court order and that Gibson told her to release the hold and take A.H. back to her parents. Johnson also said that she was following her supervisor's instructions and that she had no willful intent to disobey the court order.

Denise Gibson testified that she received a phone call from Toni Johnson on September 6 regarding the emergency hold on A.H. Johnson told her that the judge had placed a hold on A.H., and when Gibson asked why, Johnson said she did not know. According to Gibson, she then said, "[W]ell, the Judge can't just take a hold on a delinquent. There has to be a reason. We need to find out what's in that Court Order." Gibson told Johnson to call Ms. Parrish and ask her what was in the order. A short time later, Johnson called Gibson again and said that she had spoken to Ms. Parrish "and Ms. Parrish did not have a copy of the Court Order, but she [Parrish] stated that we could release the hold." Gibson responded that they could not just release the hold and asked to see the court order. Johnson told Gibson that she would get a copy of the order, and Gibson told Johnson to "let [her] know what it [said]." Gibson said she did not speak to Johnson again that day,

SLIP OPINION

however, and she "assumed since she [Johnson] was gonna get the Court Order that she looked at it, figured out what we could and couldn't do per the Court Order and had followed through with that." Gibson explained that a seventy-two-hour hold is not a disposition in a delinquency case "without notice or a reason," and that was why she wanted to know what that reason was.

Gibson said that she found out the next day that the hold had been released. When asked why she had not followed up with Johnson to find out what the order said, Gibson explained, "I trust my workers a lot." Again, she said that she assumed Johnson had seen the order and followed it "or she would've called me to clarify and ask questions." She agreed that she was ultimately responsible for the actions of her caseworkers.

On cross-examination, Gibson stated that she would not authorize the release of a hold without a court order and that she had not authorized the release of the hold in this case. She also said that Johnson had violated a court order approximately two years ago by releasing a hold on some children. Gibson denied that she had willfully violated the court's order. She also agreed that the reasoning behind the court order was irrelevant and that the order should have been followed regardless.

Sarah Ashurst, a family service worker who works with Johnson, testified that she had seen several instances of Johnson not following court orders or DHS policy, which she (Ashurst) reported to Gibson. She also testified that on September 6, she assisted Johnson in finding a placement for A.H., but later "Toni told [her] she was releasing the hold on [A.H.] to the family."

After hearing arguments from counsel, the circuit court found DHS in contempt of court and found that the "ultimate responsibility" fell on Gibson. The court specifically found Johnson's testimony credible. The court ordered Gibson to perform 160 hours of community service to be completed by December 25 and to pay $200 in the form of coloring books and other books to the court. The court also suspended her three-day sentence in the county jail "for six months on the condition that court orders are followed." In its written order filed 20 October 2016, the court found that Gibson had authorized Johnson to release the emergency hold on A.H. The court further found

> by clear and convincing evidence that Ms. Gibson, as DHS supervisor, directed, told Ms. Johnson that "the judge cannot take a 72 hour hold on a delinquent" and that Ms. Gibson willfully failed as a supervisor to take reasonable steps to follow-up to ensure this Court's 72 hour hold order was followed.

The court ordered that Gibson's community service be performed by 4 January 2017 and that the children's books be provided by 2 November 2016.

DHS filed a motion for reconsideration and stay pending appeal on 25 October 2016. In that motion, DHS argued that the court should reconsider its contempt order because (1) Gibson's conduct was not willful, (2) the emergency-hold order was not sufficiently definite in its terms and did not specifically name Gibson or impose any duties or requirements on her, and (3) the motion for citation of contempt and show cause did not put Gibson on notice that she would personally be subject to contempt sanctions. DHS further argued that Gibson's constitutional rights were violated because she never received specific notice of charges against her. Finally, DHS asserted that the $200 worth of coloring books was an inappropriate sanction because it was to the benefit of a nonparty.

On November 3, the court denied the motion to stay, and DHS filed its notice of appeal on November 9. On November 17, the circuit court entered an amended order denying the stay and the motion for reconsideration, and DHS filed an amended notice of appeal the next day. On 5 January 2017, a motion for stay pending appeal was granted by the Arkansas Supreme Court.

Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court. *Brock v. Eubanks*, 102 Ark. App. 165, 288 S.W.3d 272 (2008). Contempt is categorized into criminal contempt and civil contempt. *Shields v. Kimble*, 2016 Ark. App. 151, 486 S.W.3d 791. The distinction between relief that is civil in nature and relief that is criminal in nature has repeatedly been stated and followed by our appellate courts. *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988). An unconditional penalty is criminal in nature because it is solely and exclusively punitive in character. *Id.* A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. *Id.* Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *Applegate v. Applegate*, 101 Ark. App. 289, 275 S.W.3d 682 (2008).

This case involves criminal contempt because the penalties are unconditional and punitive. Under the standard of review for a case of criminal contempt, we view the record in the light most favorable to the circuit court's decision and affirm if the decision is supported by substantial evidence. *James v. Pulaski Cty. Cir. Ct.*, 2014 Ark. 305, 439 S.W.3d 19. Substantial evidence is evidence of a sufficient force and character to compel a

conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. *Id.* The relevant statute provides that a circuit court may punish, as criminal contempt, "willful disobedience of any process or order lawfully issued or made by it." Ark. Code Ann. § 16-10-108 (Repl. 2010). The disobedience of any judgment, order, or decree of a court having jurisdiction to enter it is such an interference with the administration of justice as to constitute contempt. *Perroni v. State*, 358 Ark. 17, 186 S.W.3d 206 (2004).

DHS first argues that Gibson was not provided sufficient notice and opportunity to defend the criminal contempt charges in violation of her due-process rights because the contempt proceedings were not initiated by the appropriate sworn documents, and Gibson was not given notice that she personally faced contempt charges. The motion for contempt contained the following allegations:

8. That on or about September 6, 2016, county supervisor Denise Gibson authorized caseworker Antoinette Johnson to release the juvenile from the legal custody of DHS and to place her back in the home of her parents, Ricky and April Hellyer.

9. That Denise Gibson authorized said action without reading the order entered by the Court, even though DHS was in possession of a copy of said order.

10. That said actions were in direct violation of this Court's orders.

11. That the actions of Denise Gibson on behalf of the Arkansas Department of Human Services were willful and wanton.

12. That the Arkansas Department of Human Services should be ordered to appear and show cause, if any it has, why it should not be held in contempt and punished accordingly for its actions.

13. That the Arkansas Department of Human Services should be held in criminal contempt to vindicate the power and dignity of the Court and to punish the disobedience of DHS.

7

Based on these allegations, we hold that Denise Gibson received sufficient notice that she might be found in criminal contempt of court. DHS filed a response to the motion and generally denied the allegations, Rielle Parrish appeared at the hearing to represent "DHS and Denise Gibson," and Gibson testified at the hearing. So we also hold that Gibson was given notice and an opportunity to defend herself. In addition, a recent case from this court explained that verified petitions and affidavits

> are not essential in every situation before a court may move forward on a petition for contempt. Rather, the primary concerns for a trial court to consider are that the alleged contemnors have notice of the contempt allegations, that they be fully informed of the allegations of contempt, and that they have the opportunity to defend themselves.

*P.J. Transp., Inc. v. First Service Bank*, 2012 Ark. App. 292, at 4–5. We find no reversible error on this point.

Next, DHS argues that the circuit court erroneously made its findings under a clear-and-convincing-evidence standard and that in a criminal contempt proceeding, proof of contempt must exist in the circuit court beyond a reasonable doubt. *Jolly v. Jolly*, 290 Ark. 352, 719 S.W.2d 430 (1986). It also says that substantial evidence does not support the circuit court's findings and that the emergency-hold order was not clear and definite in its terms. As to DHS's "wrong standard" argument, it did not raise this argument in its motion for reconsideration, and it arguably needed to given that it decided to file such a motion after it had received the court's order. *See Bibbs v. Cmty. Bank of Benton*, 375 Ark. 150, 160, 289 S.W.3d 393, 400 (2008) (declining to address argument made for the first time on appeal and noting that appellants could have raised the argument "in their brief to the circuit judge

in support of their response to the summary-judgment and dismissal motions or in their motion for reconsideration, and they failed to do so").

Regardless of the evidentiary standard used by the circuit court below, we consider the evidence in the light most favorable to the circuit court's decision concerning the contempt and affirm if there is substantial evidence to support its decision. *James*, *supra*. Here, we hold that substantial evidence supports the circuit court's decision. Johnson testified that Gibson told her to release the hold, and the circuit court found Johnson credible. We also hold that the emergency-hold order was clear that A.H. was to be taken into DHS custody, and it was not necessary to assign a duty specifically to Gibson within that order.

Finally, DHS argues that the $200 fine in the form of children's books is an "impermissible civil contempt sanction" because the court is coercing DHS into providing goods for the benefit of nonparties. We are not persuaded, as we have already determined that this was a criminal-contempt sanction.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Andrew Firth*, Office of Chief Counsel, for appellant.

No response.