Cite as 2024 Ark. 112

# SUPREME COURT OF ARKANSAS
**No.** CR–23–596

|  |  |  |
|---|---|---|
| JON COMSTOCK | | **Opinion Delivered:** June 13, 2024 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-22-1427] |
| V. | | |
| | | HONORABLE ROBIN F. GREEN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Jon Comstock appeals the Benton County Circuit Court's order dismissing his appeal of an order finding him in direct criminal contempt. For reversal, Comstock argues that the circuit court erred in (1) ruling that it lacked jurisdiction to conduct a de novo trial of the contempt finding; (2) finding him in direct criminal contempt; and (3) refusing to recuse. We affirm.

## I. *Facts*

On July 8, 2022, Benton County District Judge Chris Griffin, who sat in the capacity of a circuit judge pursuant to Administrative Order No. 18, presided over Arkansas Rule of Criminal Procedure 8.1 hearings involving felony first appearances in a Benton County jail courtroom. Comstock, a lawyer, arrived to observe the Rule 8.1 hearings. A glass window

separated the courtroom area from the public-viewing area. According to Comstock's pleading, he was sitting "behind [the] glass window where he could see—but could not hear—the proceedings." Comstock stated that the sound system for the public-viewing area was either malfunctioning or was not turned on, so he could not hear the proceedings. Comstock admitted that he "attempted to make Judge Griffin aware of the violation of the constitutional guarantees of open court proceedings at a level of voice calibrated to get the judge's attention." Judge Griffin advised Comstock that he "had no control over the sound system" and that he "should take it up with the Sheriff's office."

During a break in the Rule 8.1 proceedings, Judge Griffin asked Comstock to come inside the courtroom. They engaged in a conversation about whether Comstock had a right to hear the proceedings. Specifically, Judge Griffin submitted a statement recounting the following:

> When Mr. Comstock was brought into the courtroom[,] I said to him[,] "Jon, this isn't the Jon Comstock show, it's bond hearings and if you can't act appropriately, you can leave. [Comstock] then said angrily, "What does that mean?" I explained that I don't control the jail[']s IT department and, as I began to explain his behavior and the issues I listed above, he became louder and louder as he explained how "rights were being violated," and how he had a "right to participate." He continued to loudly speak "over" me while this occurred. I tried to explain again that he was not there to "participate" as he didn't have any clients but he, quite loudly, cut me off and said "you invited me here!" I told him sternly that I did not invite him there, that it was open to the public but only for observation. I then began to start my explanation of the above items again but he again interrupted me speaking loudly. I raised my voice and told him it was "time to go." I believe I motioned to the door. He refused to leave. He continued to speak over me and I said "leave now." He refused to leave. I then explained that this was a court proceeding and I would hold him in contempt and it would be in a Circuit Capacity (due to Supreme Court Orders. A.O. 4 and A.O. 18(6)(c)) and he'd be stuck there. He then motioned towards me, shook his hands, and even more loudly exclaimed "Do it!"

> I then held him in Direct Contempt and sentenced him to 5 days in Benton County Jail. The Deputies took custody of him and, although he initially resisted the

deputies, he ultimately cooperated and was taken into custody. [That day,] I later filed the Contempt Order and suspended 4 ½ days of the 5 days he was sentenced to initially. He ultimately served 12 hours in the Benton County Jail.

On July 8, Deputy Mary Ann Deppner of the Benton County Sheriff's Office submitted a jail-incident-report narrative. She stated that during the Rule 8.1 proceedings, "Attorney Comstock stood up several times and made several motions with his hands, and shrugged his shoulders. It was very apparent that he was not happy about the audio." She stated that Judge Griffin told Comstock, "[Y]ou're out there, flailing your arms, and putting your hands to your ears, and standing up. You are disrupting court." According to Deppner, Judge Griffin stated, "[Y]ou do not have a client at bond hearing today, so you have a right to observe, but not a right to participate. You can observe or you can leave." Deppner stated that Comstock insisted that he was not leaving, and when Judge Griffin reminded him that he could be held in contempt for disrespectful behavior in a courtroom, Comstock "yelled, 'DO IT!'" Deppner stated that she and another deputy were instructed by Judge Griffin to take Comstock into custody for five days.

Deputy Dennis Wilke of the Benton County Sheriff's Office also submitted a jail-incident-report narrative on July 8. Wilke stated that Comstock "was trying to get in the court room" but that Judge Griffin "informed [Comstock] that he would have to stay in that [adjacent, public-viewing] room to observe the proceedings." According to Wilke, Comstock "was pointing to his ears and yelling he could not hear and Judge Griffin told Mr. Comstock to sit down and stop disrupting." Wilke added, "The Judge informed Mr. Comstock that he did not appreciate him disrupting his court and this was not the Jon Comstock show. Mr. Comstock started arguing with Judge Griffin and the Judge stated that

3

he would hold him in contempt of court." Wilke stated that Comstock "then yelled very loudly at the Judge (DO IT.)." Wilke stated that he and Deputy Deppner were told to take Comstock into custody, and they escorted Comstock out of the courtroom.

On July 8, 2022, Judge Griffin, sitting in the capacity of a circuit court pursuant to Administrative Order No. 18, entered an order finding Comstock "in contempt and . . . ordered [him] to serve five (5) days in the Benton County Jail with four and a half (4 ½) days suspended. [Comstock] to serve twelve (12) hours."

Comstock filed an omnibus motion for new trial, petition for review, and notice of appeal in the Benton County Circuit Court. He later filed an amended omnibus motion for new trial, petition for review, and notice of appeal seeking plenary de novo review of the contempt finding. Comstock argued that (1) Administrative Order No. 18 did not permit a district judge to conduct contempt proceedings; (2) Arkansas Code Annotated section 16-89-130(c)(5) and (7) authorized a new trial; (3) Administrative Order No. 18 granted "plenary superintending review" by the circuit court; (4) Rule 36 of the Arkansas Rules of Criminal Procedure authorized a de novo appeal from district court to circuit court; (5) in the event that Judge Griffin's order was deemed as final, he gave notice of his appeal of the contempt finding in an appellate court; and (6) the "circuit bench [should] recuse and request that the Chief Justice assign a judge to hear this matter." In his prayer for relief, Comstock requested that the circuit court "convene a hearing to determine the specific route for review[.]" The State responded, inter alia, that Judge Griffin made his contempt finding as a circuit judge and that Comstock's remedy was appellate review.

On August 4, 2022, the circuit court heard Comstock's motion for new trial with Benton County Circuit Judge Robin Green presiding. At the conclusion of the hearing, the circuit court granted Comstock's motion for new trial on the basis that Comstock was entitled to a circuit court proceeding during which a record should be made. On September 19, the circuit court heard arguments and again granted Comstock a new trial, stating "Mr. Comstock has not had any trial[,] and I think due process rights require that he be given a trial." But on June 8, 2023, the circuit court ruled,

> This court has recognized the confused nature of the law in this area, and observed that this particular situation was not anticipated by the drafters of Administrative Order 18. This court initially determined that Mr. Comstock was entitled to a trial in this court and a trial date was set.

> Upon further reflection, this court has determined that because of the language of Administrative Order 18(c) that "Any appeal shall be taken to the Arkansas Supreme Court or Court of Appeals in the same manner as an appeal from any other judgment of the circuit court," the decision of Judge Griffin on July 8, 2022 should be accorded the status of a final judgment. This court thus determines it has no jurisdiction to conduct a trial in this matter and thus vacates the trial setting and dismisses the case.

Comstock appealed and filed a motion to certify the case to this court. We granted the motion to certify and now consider Comstock's appeal.

## II. *Arguments*

On appeal, Comstock argues that (1) the circuit court had jurisdiction to conduct a de novo trial of the criminal contempt finding by Judge Griffin who acted under the authority of Administrative Order No. 18; (2) if this court holds that the circuit court properly ruled that it lacked jurisdiction, then Comstock directly appeals his contempt finding; and (3) the circuit court erred in refusing to recuse.

5

A. Jurisdiction

Comstock asserts that "the circuit court ha[d] jurisdiction to conduct a de novo trial of, or otherwise review, a summary criminal-contempt finding made by a district [court] while the district [court] was purporting to act under powers delegated by the circuit court under Administrative Order 18[.]"

The State contends that "[t]he circuit court correctly ruled that Judge Griffin's order summarily finding Comstock in direct criminal contempt was a final[,] appealable order." It asserts that Judge Griffin acted as a circuit judge, not as a district judge, when he issued the contempt finding, and that Judge Green properly ruled that the circuit court lacked jurisdiction to conduct a plenary proceeding to nullify Judge Griffin's contempt order. Otherwise, the State asserts, Judge Griffin "would not have had jurisdiction over the felony first-appearance proceedings at all."

Amendment 80 to the Arkansas Constitution states that circuit courts "are trial courts of original jurisdiction of all justiciable matters not otherwise assigned[.]" Ark. Const. amend. 80, § 6(A). Circuit courts have "original jurisdiction, exclusive of the district court," over felonies. Ark. Code Ann. § 16-88-101(a)(3) (Supp. 2021). District courts have "original jurisdiction, concurrent with Circuit Courts, of misdemeanors, and . . . also have such other criminal jurisdiction as may be provided" by the Arkansas General Assembly. *Id.* § 7(B). Appellate jurisdiction over the district court is placed in the circuit court. *See id.* § 7(A).

Arkansas Supreme Court Administrative Order No. 18(6)(b) provides that a state district court judge may be referred matters pending in the circuit court: "A state district court judge presiding over any referred matter shall be subject at all times to the

6

superintending control of the administrative judge of the judicial circuit." Ark. Sup. Ct. Admin. Order No. 18(6)(b). Referred matters can include a criminal matter such as the "prosecution of an offense lying within the exclusive jurisdiction of the circuit court[,] including "[c]onduct[ing] a first appearance pursuant to Rule 8.1" of the Arkansas Rules of Criminal Procedure. Ark. Sup. Ct. Admin. Order No. 18(6)(b)(5)(A)(iv). "The final judgment, although ordered by a state district court judge, is deemed a final judgment of the circuit court and will be entered by the circuit clerk under Rule 58 of the Arkansas Rules of Civil Procedure." Ark. Sup. Ct. Admin. Order No. 18(6)(d)(4). "Any appeal shall be taken to the Arkansas Supreme Court or Court of Appeals in the same manner as an appeal from any other judgment of the circuit court." *Id.*

Here, on July 8, 2022, Judge Griffin sat in the capacity of a circuit court judge, pursuant to Administrative Order No. 18, and conducted a Rule 8.1 hearing in the Benton County jail courtroom. During the Rule 8.1 hearing, based on his powers inherent to a circuit court judge, Judge Griffin made the criminal-contempt finding and memorialized that finding in the circuit court's July 8 contempt order. We thus conclude that the contempt order was a final order from a circuit court and that the appellate court is the proper venue for a review of that order. Accordingly, we hold that the Benton County Circuit Court properly found that it lacked jurisdiction to conduct a trial in the matter and dismissed the case.

## B. Criminal Contempt

Next, Comstock argues that if the Benton County Circuit Court lacked jurisdiction to review the contempt proceedings, then he is entitled to a direct appeal of the contempt

7

finding. Specifically, he contends that this court is without an adequate record to make a substantial-evidence determination and that the circuit court's finding should be reversed because "Judge Griffin's rendition [of the events] establishes that Comstock's actions are properly characterized as an attempt to notify the judge of the violation of the public access/open proceedings guarantees."[1] The State responds that this court should affirm the contempt order because "Comstock's contemptuous behavior happened in the immediate presence of the circuit court, [and] the court had the authority to summarily punish him for contempt."

On appeal from an order of contempt, we view the record in the light most favorable to the circuit court's decision, and we affirm the decision if it is supported by substantial evidence and reasonable inferences therefrom. *Ark. Dep't of Hum. Servs. v. Dowdy*, 2018 Ark. 307, at 6, 558 S.W.3d 847, 851. Substantial evidence is evidence of a sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond

---

[1]On the issue of an adequate record, Administrative Order No. 4, as of January 1, 2024, provides that district courts sitting as circuit courts under Administrative Order No. 18 are now required to produce a verbatim record of the proceedings. (*In re* Admin. Order No. 4, Addition to Court Notes (Ark. June 22, 2023) (per curiam order by syllabus entry only). But that change to Administrative Order No. 4 was not in effect at the time of this case. Further, Arkansas Rule of Appellate Procedure–Civil 6(e) provides that if anything material to either party is omitted from the record, this court may direct that the record be settled and supplemented and that a supplemental record be certified and transmitted. Here, nothing was omitted from the record because there was no requirement that the Rule 8.1 proceeding be transcribed. In fact, the 244-page record consists of Benton County Circuit Court transcripts and pleadings, including three statements—an incident report filed by Judge Griffin, a jail–incident-report narrative by Deputy Mary Ann Deppner, and another jail–incident-report narrative by Deputy Dennis Wilke—that described Comstock's behavior in the courtroom. Comstock also included his version of events in his omnibus motion. Thus, under these specific circumstances, we deem the record sufficient for our review.

suspicion or conjecture. *James v. Pulaski County Circuit Court, Fifth Division*, 2014 Ark. 305, at 4–5, 439 S.W.3d 19, 23. When a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind that order to determine whether it is valid. *Id.* at 5, 439 S.W.3d at 23.

Both the Arkansas Constitution and the governing state statute distinguish between direct and indirect contempt. *See* Ark. Const. art. 7, § 26 ("The General Assembly shall have power to regulate, by law, the punishment of contempts; not committed in the presence or hearing of the courts, or in disobedience of process."); Ark. Code Ann. § 16-10-108 (Repl. 2010); *Davis v. Merritt*, 252 Ark. 659, 480 S.W.2d 924 (1972). Direct contempt is a contemptuous act "committed within the immediate presence of the Court." *Davis*, 252 Ark. at 670, 480 S.W.2d at 930.

A court has inherent power to punish contemptuous behavior committed in its presence, without regard to the restrictions imposed by section 16-10-108(a). *Dowdy*, 2018 Ark. 307, at 9, 558 S.W.3d at 853. Summary punishment for contempt committed in the presence of the court is an inherent power reserved to the judiciary and cannot be abridged by legislation. *Id.*, 558 S.W.3d at 853; *see also* Ark. Code Ann. § 16-10-108(c) ("Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense."). Arkansas Code Annotated section 16-10-108(c) provides the inherent power of the court to summarily punish contumacious conduct immediately occurring in its presence. *See James*, 2014 Ark. 305, at 19, 439 S.W.3d at 31. This power is

9

necessary to enforce the authority of the court and to protect the dignity of the proceedings before it. *Id.*, 439 S.W.3d at 31.

Here, Comstock's recitation of the facts in his motion, the statements from Judge Griffin, and the narratives of the two court deputies provide substantial evidence to support the circuit court's direct criminal-contempt finding. Comstock committed in the presence of the circuit court the egregious conduct of disrupting the Rule 8.1 proceedings, interrupting Judge Griffin, repeatedly refusing to leave when asked, and yelling "DO IT!" when told that he could be held in contempt. Under its inherent power to punish Comstock for his contemptuous behavior, the circuit court clearly found Comstock guilty of direct criminal contempt and immediately sentenced him. *See Dowdy*, 2018 Ark. 307, at 9, 558 S.W.3d at 853; *see also* Ark. Code Ann. § 16-10-108(c). Thus, viewing this record in the light most favorable to the circuit court's decision, we hold that substantial evidence supports the circuit court's order finding Comstock in direct criminal contempt. Because we affirm the circuit court's finding, we decline to reach Comstock's recusal argument. Accordingly, we affirm.

Affirmed.

BAKER, HUDSON, and HILAND, JJ., concur in part and dissent in part.


**CODY HILDAND, Justice, concurring in part and dissenting in part.** I join the majority's jurisdictional analysis but write separately to address the merits of the contempt conviction. The order issued by Judge Griffin states "[t]hat multiple direct orders were given, that [Comstock] willfully refused to comply with the Court's lawful orders, and

10

that [Comstock] was found in direct criminal contempt." As stated by the majority, because there was no requirement for a record pursuant to Administrative Order No. 4. at the time, there is no verbatim record of the interaction between Judge Griffin and Comstock for this court to review.

An act is contemptuous if it interferes with the order of the court's business or proceedings or reflects on the court's integrity. *Etoch v. State*, 332 Ark. 83, 964 S.W.2d 798 (1998). A court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights. *Id*. When a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind that order to determine whether it is valid. *James v. Pulaski Cnty. Cir. Ct.*, 2014 Ark. 305, at 5, 439 S.W.3d 19, 23.

Based on Judge Griffin's written order, this court cannot determine what "direct orders were given" or how Comstock "willfully refused to comply." We, likewise, cannot assess whether Comstock's actions interfered with the court's business or determine the ways in which Comstock disobeyed the court's orders. While it is true that a much more detailed statement from Judge Griffin is attached to a pleading submitted by the State, it is not an affidavit, and the statement is not sworn or verified. The same can be said regarding the hearsay statements submitted by both Deputy Deppner and Deputy Wilke—statements given by witnesses whom Comstock had no opportunity to confront or cross-examine. In his brief, Comstock states that he "disputes a substantial portion of Judge Griffin's rendition" of the facts. This court is not a fact-finder. Because Comstock's recitation of the relevant events is not presently before us, ending the analysis here without affording Comstock the

11

opportunity to create a record effectively deprives him of due process and his right to appeal.[1]

Deficiencies in the record on appeal must be addressed if they hinder our review of the merits. It is axiomatic that inclusion of the underlying interaction in which the contempt resulted is material to a party and necessary for this court to conduct its review.[2] Because I believe the record is insufficient to render a decision that substantial evidence supports the finding of contempt, I respectfully dissent from the result reached by the majority and would remand for a hearing over which Judge Griffin presides under circumstances in which a verbatim record could be constructed and a supplemental record be certified and transmitted to this court.

BAKER and HUDSON, JJ., join.

*Jeff Rosenzweig*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.

---

[1]Contempt punishment is a Class C misdemeanor under Arkansas Code Annotated section 16-10-108(b), and one has the right to appeal a misdemeanor conviction pursuant to Arkansas Code Annotated section 16-91-101(a) and Rule 1(a) of the Arkansas Rules of Appellate Procedure–Criminal.

[2]*See* Ark. R. App. P.–Civ. 6(e) (applicable through Ark. R. App. P.–Crim. (4)(a)).